SAMUEL DAVID CLARK *v.* STATE OF INDIANA

[No. 1-677A117. Filed January 31, 1978.]

R. *Clark Allen, White & Allen,* of New Castle, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

LYBROOK, J. — Samuel David Clark brings this appeal from his conviction of two counts of Reckless Homicide,[1] and two counts of Causing Death While Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor.[2]

The evidence introduced at trial showed that on April 4, 1976, Clark and others drove to Four Points, Ohio, where they consumed large amounts of alcoholic beverages. On their return to Henry County, Indiana, the men decided to race their cars to see who had the fastest vehicle. Proceeding to a rural area outside of New Castle, Clark and another person lined up their vehicles side by side on Farmer's Pike, a public highway, with Clark's vehicle being left of center. The two vehicles raced at a speed of 85 m.p.h. for a distance of approximately ¼ to ½ mile when the two cars went over a slight rise or hill and collided head-on with a car driven by Melvin Ghearing. Ghearing was injured in the collision and his wife Nancy, and infant daughter were killed.

Clark was taken by ambulance to the Henry County Hospital where Trooper George Boaz of the Indiana State Police questioned

---

1. IC 1971, 9-4-1-54 (Burns Code Ed.).

2. IC 1971, 9-4-1-54 (Burns Code Ed.).

him. Boaz testified that he smelled alcohol on Clark's breath and then asked Clark to submit to the taking of a blood sample for a blood alcohol test, to which Clark agreed. Clark signed a written waiver and made no objection to the drawing of a blood sample.

Lt. Paul Assa of the Indiana State Police, a certified chemical test operator, testified that the blood sample had an alcohol content of .283%.

Clark was subsequently arrested, charged and convicted by jury of two counts of Reckless Homicide and two counts of Causing Death while Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor. The trial court entered judgment for Reckless Homicide of Nancy Ghearing and for Causing the Death of Lisa Ghearing While Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor. Clark filed his Motion to Correct Errors on March 6, 1977, which was overruled on March 10, 1977. Clark subsequently filed his praecipe on April 7, 1977, and brings this appeal.

In his Motion to Correct Errors, Clark raises the following issues for review:

(1)  Whether the trial court erred in allowing the admission of inflammatory and irrelevant photographs into evidence.

(2)  Whether the trial court erred in allowing admission of evidence concerning chemical analysis of a blood sample taken from defendant Clark.

I.

Prior to the jury being impaneled, Clark objected to the introduction of State's proposed Exhibit No. 3, which is a photograph of the accident victims, Nancy and Lisa Ghearing, in the Ghearing vehicle after the collision. Clark alleges that the photograph would not support the State's case in any way, there being no issue of fact that the two died as a result of injuries suffered in the accident, and that the photograph did not relate to the positioning of the car or the cause of the accident. Clark maintains that admission of the photograph served only to inflame and prejudice the jury.

The admission of photographs into evidence is a matter within the sound discretion of the trial court, and will not be disturbed unless an abuse of discretion is shown. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

The fact that a photograph might arouse the passion of the jury is not sufficient ground in itself to justify its exclusion from the evidence if the photograph is material and relevant. *Carroll v. State* (1975), 263 Ind. 696, 338 N.E.2d 264. The relevancy of a photograph is to be determined by an inquiry as to whether or not a witness would be permitted to describe the objects or scenes photographed. *Pierce v. State* (1970), 253 Ind. 650, 256 N.E.2d 557. So long as pictures involving a crime are relevant to the questions at issue, they are admissible. The mere fact that they may be gory, revolting or inflammatory does not make them inadmissible. *Quinn v. State* (1976), 265 Ind. 545, 356 N.E.2d 1186.

It is in the record before us that numerous witnesses testified to the deaths of Mrs. Ghearing and her daughter, the discovery of their bodies in the wreckage of their vehicle, and the condition of that vehicle. While State's Exhibit No. 3 is a more vivid portrayal of these facts, we cannot say that it is inadmissible where the photograph is an accurate portrayal of the scene witnessed and described at trial, and we find no error in its admission.

II.

Clark also objects to the admission of evidence concerning chemical analysis of a blood sample taken from him at the Henry County Hospital. From his investigation of the accident and the smell of alcohol on Clark's breath, Trooper Boaz decided to seek a chemical test for intoxication. Clark was asked if he would consent to the taking of a blood sample, which Clark agreed to do both orally and in writing. There is evidence that Clark had been advised of his Miranda rights prior to any questioning by police, that the police had sought permission of hospital authorities before they questioned Clark, and that Clark was advised that he did not have to give the police a blood sample. The record does reflect that Clark

was injured and in an emotional state; however, there is also evidence to show that the nurses asked Clark if he knew what he was signing when he agreed to the blood sample. Clark was described as being "alert", "responsive", and able to recognize persons some distance away in the emergency room.

Indiana has an implied consent statute among the provisions of the Motor Vehicle code which provides that drivers have given consent to a chemical test for intoxication when they drive, operate or are in actual physical control of a vehicle on a public highway in this state. Refusal to submit to such a test, when requested to do so by a law enforcement officer, subjects the driver to suspension of his driving privilege.

Sections of the Indiana Implied Consent Law relevant to our consideration state:

"9-4-4.5-1 [47-2003c]. *Implied consent to chemical test for intoxication.*—Any person who drives, operates, or is in actual physical control of a vehicle on the public highways of this state shall be deemed by virtue of such driving, operation or control, to have given his implied consent to submit to a chemical test for intoxication when asked to submit to such test by any law enforcement officer pursuant to the provisions of this chapter. [9-4-4.5-1 — 9-4-4.5-6].

9-4-4.5-2 [47-2003d]. *Definitions.* . . . (d) The term 'chemical test' for the purposes of this chapter means an analysis by such persons using such techniques and equipment as shall have been approved by the Department of Toxicology of the Indiana University School of Medicine of the breath, blood, urine or other bodily substance for the determination of the presence of alcohol or drugs, or a combination of alcohol and drugs in such quantities as to constitute intoxication or 'under the influence' as that term may be defined by statute.

9-4-4.5-3 [47-2003e]. *Opportunity to submit to chemical test prior to arrest.*—Any law enforcement officer authorized to enforce the laws of this state regulating the use and operation of vehicles on public highways who has probable cause to believe that any person has committed the offense of driving or being in actual physical control of a vehicle while under the influence, in his presence or view, or who has probable cause to believe that any person who has been involved in a motor vehicle accident has

committed such offense, though not in his presence or view, shall not place such person under arrest for such offense until he has first offered to such person the opportunity to submit to a chemical test for intoxication to be administered by a person certified as a valid chemical test operator by the Department of Toxicology of the Indiana University School of Medicine. Any such person who agrees to submit to such chemical test for intoxication shall not be arrested for driving while under the influence, but shall accompany the officer to the nearest available chemical test device for the purpose of taking such test as a condition of the driving privilege, (a) If such chemical test results in prima facie evidence that such person is not under the influence, he shall not be arrested and charged with such offense and he shall be released immediately.

(b) If such chemical test results in relevant evidence, coupled with other evidence, that such person is under the influence, he may be arrested and charged with such offense.

(c) If such chemical test results in prima facie evidence that such person is under the influence, he shall be arrested and charged with such offense.

(d) If any person shall refuse to submit to such chemical test, pursuant to the terms of this chapter [9-4-4.5-1 — 9-4-4.5-6], he may be arrested and charged with such offense, and his current driving license shall be delivered to the judge of the court in which such charge is filed, along with a certification of refusal to submit to chemical test for intoxication on a form designed and furnished by the commissioner of motor vehicles.

(e) Nothing in this chapter shall be interpreted as prohibiting an arrest and charge for any other offense of the laws of the state or its political subdivisions as may be prescribed by applicable law. IC 1971, (Burns Code Ed.).

The statutory provisions set forth in the Implied Consent Statute apply not only to the crime of Driving Under the Influence but also to the crimes of Reckless Homicide and Causing a Death While Driving Under the Influence, the crimes for which Clark was convicted here.

Pursuant to the provisions of this act, Clark was not placed under arrest at the time Trooper Boaz asked him to consent to the taking of a blood sample. Under the terms of IC 9-4-4.5-1 — 9-4-4.5-3,

Clark had given "implied" consent to the taking of such a chemical test when he drove his vehicle in Indiana and was requested to submit to such a test by a law enforcement officer. Trooper Boaz had probable cause to believe that Clark was under the influence of alcohol at the time of the accident as a result of Boaz's investigation at the scene and the smell of alcohol on Clark, and therefore Boaz's request that Clark submit to a chemical test was justified.

Clark argues that any consent for taking the blood sample was not knowing and voluntary on his part because of his injuries and emotional state, and thus the test was an illegal search in violation of his constitutional rights.

The question of whether or not Clark gave knowing and voluntary consent to the taking of a blood sample was a question for the trial court to decide. The trial court property held a hearing outside the presence of the jury during which it heard testimony which showed that Clark was advised of his Miranda rights, was informed he did not have to allow the blood test, and was questioned repeatedly by the nurse as to whether he knew or understood what he was signing. The record shows that Clark consented orally and in writing, and that he was alert and responsive at the time he gave consent.

This court will not ordinarily overturn a trial court determination on the issue of voluntariness when the finding is based upon conflicting evidence. It is the trial court which weighs conflicting evidence and where there is sufficient evidence to support the finding we can find no abuse of trial court discretion. See *Riddle v. State* (1976), 264 Ind. 587, 348 N.E.2d 635; also *French v. State* (1977), 266 Ind. 276, 362 N.E.2d 834.

We hold in the case at bar that Clark did give knowing and voluntary consent to the taking of the blood sample, but assuming arguendo that Clark did not, we think that the admission of the results of the chemical blood test for intoxication would have been allowed on the basis of *DeVaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732. In *DeVaney*, the Indiana Supreme Court considered circumstances strikingly similar to those of the instant case, where as here, the defendant-appellant was convicted of Reckless Homicide

and Causing the Death of Another While Driving Under the Influence of Intoxicating Liquor. Justice Hunter, in the majority opinion, set forth the following analysis:

"Appellant's second contention is that the trial court erred in failing to suppress evidence concerning a blood sample taken from the appellant. Appellant claims the taking violated his constitutional rights. He relies on Article 1, Section 11 of the Indiana Constitution, and the Fourth and Fourteenth Amendments of the Constitution of the United States. The pertinent portion of Art. 1, § 11 reads:

'The right of the people to be secure in their *persons*, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated . . .' [Emphasis by the Court in DeVaney.]

It is clear that the taking of a blood sample is an intrusion meant to be limited by these constitutional protections. See, *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. *Schmerber* concerned the validity of a blood test administered by the police after the defendant had been involved in an auto accident. At the scene of the accident the police noted that the defendant had liquor on his breath and that his eyes were bloodshot. They noticed these same characteristics when they saw appellant in the hospital two hours later. The Supreme Court held that probable cause was present for the test, and, due to the fact that the evidence might soon disappear, exigent circumstances were present making the acquisition of a search warrant unnecessary.

*Schmerber* is practically on all fours with the case at bar. In appellant's case, he was involved in an auto accident and the police noticed liquor on his breath both at the scene of the accident and at the hospital. Probable casue was clearly present. If the police were required to obtain a search warrant, the alcohol in the blood stream might dissipate. It seems essential that in order to obtain accurate results from the test, the blood sample be taken as close to the time of the accident as possible. Thus, exigent circumstances were also present since the evidence might soon disappear during the time necessary to obtain the warrant. Appellant has unsuccessfully attempted to distinguish this case from *Schmerber*. Appellant notes that the defendant in *Schmerber* has been arrested and given his *Miranda* warnings. However, we are not here concerned with the Fifth Amendment right against self-incrimination nor with the Sixth Amendment right

to counsel. *Schmerber* specifically noted that the taking of a blood sample did not violate a defendant's right against self-incrimination. *There is no requirement that a defendant must voluntarily waive any rights in order to validate a warrantless search based on probable cause where exigent circumstances are present. No error was committed in refusing to suppress the evidence concerning the taking of the blood sample and the results of the subsequent test."* (Our emphasis).

Finally Clark maintains that Trooper Boaz should have administered a chemical breath test rather than taking a blood sample by syringe.

Trooper Boaz testified that he did not offer Clark the opportunity to take a chemical breath examination because he thought a blood sample would be more convenient considering Clark had suffered facial injuries and Boaz did not know whether a chemical breath device was available in New Castle and if it could be brought to the hospital.

This court will not construe the language "nearest available test device" so narrowly as to require a law enforcement officer to forego an accurate and approved chemical test (which consisted of taking a blood sample at the hospital and mailing it to the State Police laboratory for analysis by a certified chemical test operator)[3] for another which would have required either moving Clark to another location or transporting a chemical breath test device to the hospital.

Having found no error on the part of the trial court, we affirm the judgment.

Affirmed.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE — Reported at 372 N.E.2d 185.

---

3. IC 1971, 9-4-4.5-5 (Burns Code Ed.).