Lloyd FRENSEMEIER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 60A04–0510–CR–570.

Court of Appeals of Indiana.

June 9, 2006.

Samuel S. Shapiro, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Lloyd Frensemeier brings this interlocutory appeal challenging the denial of his motion to suppress. Specifically, Frensemeier argues that the police officers acted improperly in ordering hospital personnel to draw blood from him when a sheriff's deputy believed that he had operated a vehicle while intoxicated because the deputy smelled alcohol on his

breath and noticed that his eyes were bloodshot at the scene of an accident. Concluding that the results of the blood tests are admissible in a prosecution against Frensemeier for driving while intoxicated, we affirm the trial court's denial of the motion to suppress.

### FACTS

On December 12, 2004, at approximately 4:30 a.m., Owen County Deputy Sheriff Phillip White was dispatched to the scene of a two-car accident on U.S. 231, approximately four miles south of Spencer.[1] When Deputy White arrived on the scene, there were two cars in the northbound lane and an elderly man was pinned inside one of the vehicles. Frensemeier was the driver of the other vehicle, and an ambulance was summoned. Frensemeier told Deputy White that he had consumed "a couple of beers" two hours before the accident at a party at Indiana State University. Appellant's App. p. 13. Deputy White observed that Frensemeier smelled of alcohol, had bloodshot eyes, and that his manual dexterity was slow. Frensemeier told Deputy White that he may have fallen asleep at the wheel just prior to the accident. However, Deputy White did not administer any field sobriety tests and made no further assessment of Frensemeier's physical dexterity. Also, because Deputy White's battery was dead in his portable breath machine, no preliminary breath test was administered. Deputy White noticed that Frensemeier's speech was clear, and he did not think that Frensemeier was "really drunk." Appellant's App. p. 60.

Frensemeier was transported to Bloomington Hospital, where it was determined that he had sustained a shoulder injury in the accident. Believing that Frensemeier might have been driving while intoxicated in light of the suspected signs of intoxication that were observed, Deputy White ordered a reserve deputy to have hospital personnel draw Frensemeier's blood for testing. That test revealed a blood alcohol content of .17%.

As a result of this incident, Frensemeier was charged with operating a vehicle while intoxicated, a class A misdemeanor. Thereafter, Frensemeier filed a motion to suppress the blood test evidence, alleging that there was no probable cause or exigent circumstances that justified the blood draw. In essence, Frensemeier maintained that the drawing of his blood violated the provisions of Article One section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution.

Following a hearing, the trial court denied Frensemeier's motion to suppress on August 11, 2005. The trial court subsequently certified its order for interlocutory appeal, and we accepted jurisdiction on November 21, 2005.

### DISCUSSION AND DECISION

#### I. Standard of Review

Before proceeding to the merits of Frensemeier's claim, we note that our standard of review regarding the denial of a motion to suppress evidence is similar to other sufficiency issues. *Ammons v. State*, 770 N.E.2d 927, 930 (Ind.Ct.App.2002). We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. *Id.* We will not reweigh the evidence, and we consider only the evidence most favorable to the trial court's ruling along with any uncon-

---

1. Deputy White was hired as an appointed sheriff's deputy on September 13, 2004. Deputy White ultimately graduated from the Indiana Law Enforcement Academy on May 12, 2005, and was first certified by the State Department of Toxicology in May 2005.

troverted evidence to the contrary. *Smith v. State,* 780 N.E.2d 1214, 1216 (Ind.Ct. App.2003).

### II. Warrantless Blood Testing

#### A. Fourth Amendment Analysis— Generally

 In general, the Fourth Amendment prohibits warrantless searches. *Edwards v. State,* 762 N.E.2d 128, 132 (Ind. Ct.App.2002). If the search is conducted without a warrant, the burden is upon the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Id.* That is, searches conducted without a warrant are per se unreasonable subject to a few well-delineated exceptions. *Johnson v. State,* 766 N.E.2d 426, 432 (Ind.Ct.App.2002). A warrantless search of one's person ordinarily must also be supported by probable cause. *Conwell v. State,* 714 N.E.2d 764, 766 (Ind.Ct.App.1999).

 One well-recognized exception to the warrant requirement [2] is when police have probable cause for the search and exigent circumstances exist rendering obtaining a warrant impractical. *Moore v. State,* 827 N.E.2d 631, 637 (Ind.Ct.App. 2005), *trans. denied.* One such exigent circumstance that justifies a warrantless search occurs when incriminating evidence is in jeopardy of being destroyed or removed unless immediate action is taken. *Id.*

 It is clear that the taking of a blood sample is an intrusion meant to be limited by the constitutional protections that are afforded an individual under the Fourth Amendment to the United States Constitution, as well as Article One, section 11 of the Indiana Constitution. *Clark v. State,* 175 Ind.App. 391, 372 N.E.2d 185, 189 (1978). The seminal case concerning the

nonconsensual and warrantless law enforcement seizure of a blood sample from a driver involved in a motor vehicle accident is *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

In *Schmerber,* the Supreme Court began by noting that the "compulsory administration of ... blood test[s] ... plainly constitute searches of 'persons' " within the meaning of the Fourth Amendment. *Id.* at 767, 86 S.Ct. 1826. The Court held that the warrantless and nonconsensual taking of the defendant's blood constituted a reasonable search and seizure incident to the defendant's arrest under the Fourth Amendment for four reasons: (1) the officer "plainly" had probable cause that the defendant had been operating a vehicle under the influence of alcohol, giving rise to probable cause that the testing of the defendant's blood would reveal the presence of alcohol; (2) the rapid diminishment of blood alcohol content after drinking stops justified proceeding with the search without first obtaining a warrant; (3) the blood test was a reasonable method of measuring the defendant's blood alcohol level; and (4) the test was performed in a reasonable manner. *Id.* at 768–72, 86 S.Ct. 1826.

The Supreme Court offered the following strongly-worded caveats, however. First:

> The interests in human dignity and privacy which the Fourth Amendment protects forbids any [intrusions beyond the body's surface] on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such

---

**2.** The State does not dispute that Frensemeier did not consent to the blood draw.

evidence may disappear unless there is an immediate search.

*Id.* at 769–70, 86 S.Ct. 1826. Second:

> It bears repeating ... that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States' minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Id.* at 772, 86 S.Ct. 1826. In addition to the above, this court observed in *Hannoy v. State*, 789 N.E.2d 977, 985 (Ind.Ct.App. 2003), that *Schmerber* requires the existence of probable cause that a driver's blood will contain evidence of alcohol or illegal substances before a law enforcement officer may order it to be drawn and tested, in the absence of the person's consent.

### 1. Probable Cause

■ In determining whether the blood draw was justified here under an exception to the warrant requirement, it is first necessary to decide whether probable cause existed to administer that test. We note that probable cause is a fluid concept that is incapable of precise definition. *Snover v. State*, 837 N.E.2d 1042, 1048 (Ind.Ct.App.2005). Probable cause is established where a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of the premises or person will uncover evidence of a crime. *Walker v. State*, 829 N.E.2d 591, 594 (Ind.Ct.App.2005), *trans. denied.*

■ For purposes of operating while intoxicated offenses, "intoxication" means that a person is under the influence of alcohol, or some controlled substance, such that there is an impaired condition of thought and action and the loss of normal control of the person's faculties. Ind.Code § 9–13–2–86. Hence, to establish probable cause in this case, the State was required to demonstrate that a reasonably prudent person would have believed that the facts demonstrated that evidence of alcohol impairment would be found in Frensemeier's blood. Objectively observed clear indications of intoxication include dilated pupils, bloodshot eyes, glassy eyes, and the odor of alcohol on the person's breath. *Datzek v. State*, 838 N.E.2d 1149, 1156 (Ind.Ct. App.2005). Furthermore, we observed in *Hannoy* that "the amount of evidence needed to supply probable cause of operating while intoxicated is minimal; we have held that noticing the odor of alcohol on the driver's breath during the course of an accident investigation can be sufficient." 789 N.E.2d at 989; *see also Clark v. State*, 175 Ind.App. 391, 372 N.E.2d 185, 190 (1978) (holding that probable cause was "clearly present," justifying the taking of a blood sample without the defendant's consent when it was established that the defendant was involved in an automobile accident and the police noticed liquor on his breath at the scene of the accident and at the hospital).

■ In this case, the evidence showed that when Deputy White ordered the blood draw, he knew that Frensemeier had been involved in an automobile accident, that his breath smelled of alcohol, and that his eyes were bloodshot. Tr. p. 6–7. Frensemeier admitted that he had been drinking, and Deputy White noticed that Frensemeier's manual dexterity was slow. Frensemeier also told Deputy White that he might have fallen asleep at the wheel. *Id.* at 6–9. Although Deputy White may not have considered Frensemeier to be "really drunk," he believed that alcohol may have been a factor in the accident. Tr. p. 9.

In our view, such objective facts provided sufficient evidence to permit a reasonably prudent person to believe that evidence of alcohol impairment would be found in Frensemeier's blood. As a caveat, while we cannot say that the occurrence of a traffic accident coupled *only* with an odor of alcohol will rise to the level of probable cause in all instances that would justify the warrantless blood testing of a defendant, the additional factors suggesting Frensemeier's suspected intoxication were sufficient to demonstrate that Deputy White had probable cause to order the blood draw.

### 2. Exigent Circumstances

Notwithstanding our conclusion that probable cause for the blood draw existed in this case, we must also determine whether the test was justified under the exigent circumstances exception to the warrant requirement. As set forth above, the existence of exigent circumstances will, in some instances, justify an otherwise illegal, warrantless search when probable cause is found. *See Moore*, 827 N.E.2d at 637. And one such exigent circumstance concerns the situation where incriminating evidence might be destroyed or removed unless immediate action is taken. *Id.* By the same token, exigent circumstances cannot be created by police officers to justify warrantless searches. *State v. Williams*, 615 N.E.2d 487, 488 (Ind.Ct.App.1993).

It has been determined that alcohol dissipates in the body once a person ceases his alcohol intake. *See Schmerber*, 384 U.S. at 770–71, 86 S.Ct. 1826. Moreover, this court has observed that "the threat of the 'metabolic destruction of evidence' of a suspect's intoxication, i.e., the bodily absorption of alcohol in the bloodstream," constitutes exigent circumstances.

*Zimmerman v. State*, 469 N.E.2d 11, 17 (Ind.Ct.App.1984) (citing *Shultz v. State*, 417 N.E.2d 1127, 1138 (Ind.Ct.App.1981)).

In this case, the evidence established that Frensemeier ceased his alcohol intake when he left the party he had attended at Indiana State University. Tr. p. 6–7. Hence, it took some time for him to drive to the site in Owen County where the accident occurred. Frensemeier was then transported to Bloomington Hospital, which took additional time. Moreover, because Frensemeier was transported to Bloomington, the deputies would likely have been required to obtain a search warrant from a Monroe County judge. There was no evidence that Monroe County had instituted a nighttime warrant procedure or that an out-of-county law enforcement officer would have been able to procure a warrant by instituting such a procedure. That said, it is apparent that if the police officers were forced to obtain a warrant before conducting the blood draw, it is entirely possible that Frensemeier no longer would have been impaired or intoxicated. Such would have resulted in the loss of evidence of intoxication. Therefore, the record supports a finding that exigent circumstances existed in this case. *See Zimmerman*, 469 N.E.2d at 17.

For these reasons, we conclude that the blood draw in this case did not violate the protections afforded to Frensemeier under the Fourth Amendment. As a result, the trial court properly denied Frensemeier's motion to suppress on this basis.

### B. Challenge Under the Indiana Constitution

In addition to Frensemeier's claims under the Fourth Amendment, he maintains that the blood draw violated Article One section 11 of the Indiana Consti-

tution.[3] A challenge to search and seizure under this provision requires the court to assess the reasonableness of the search and seizure given the totality of the circumstances that exist. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005). Although the language of Article One, section 11 tracks the language of the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution. Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officers, concluding that the search is legitimate where it is reasonable given the totality of the circumstances. In making the "reasonableness" determination, we will consider: (1) the degree of suspicion that a violation has occurred; (2) the degree of intrusiveness that the method of the search imposes on the person; and (3) the extent of law enforcement needs. *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006).

In this case, the degree of suspicion that Frensemeier drove his vehicle while intoxicated is sufficiently high, as demonstrated by the circumstances supporting Deputy White's probable cause determination. As discussed above, the factors including Deputy White's knowledge that Frensemeier had been involved in an automobile accident, as well as the alcohol on Frensemeier's breath, his bloodshot eyes, and his slow manual dexterity, all supported a legitimate concern that Frensemeier had been driving while intoxicated.

Finally, the law enforcement needs were great in this instance, given the desire to remove intoxicated drivers from our highways. Such is a significant goal of our legislature given the recent reduction of the blood alcohol content level that constitutes intoxication. *See* Ind.Code § 9–30–5–1. Moreover, the motor vehicle accident in this case resulted in injuries to both drivers. Tr. p. 6–7. Both criminal and civil sanctions were implicated, and whether Frensemeier's blood alcohol level established that he was impaired was essential to both components of our legal system. Hence, when considering these factors, we conclude that the police officers' actions under these circumstances were reasonable under the Indiana Constitution, and Frensemeier's challenge under Article One, section 11 of the Indiana Constitution similarly fails. For these reasons, we conclude that the trial court properly denied Frensemeier's motion to suppress.

The judgment of the trial court is affirmed.

MAY, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent from the majority's conclusion that probable cause existed to believe that a non-consensual blood draw at the hospital would reflect a blood alcohol content in excess of 0.08. See I.C. § 9–30–5–1.

Deputy White said that he smelled alcohol and that Frensemeier's eyes appeared bloodshot and that his movements were slow, whether from injury or some other cause. Countering such observations or impressions, however, was Deputy White's testimony that the defendant's speech was clear, that there was no fact or circumstance that suggested defendant was drunk, and that he did not come away with

---

**3.** The relevant portion of Article One, section 11 provides that "The right of the people to be secure in their person, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated."

the thought that Frensemeier was intoxicated. Taken in totality, Deputy White's observations and impressions would not, in my view, lead a reasonable person to believe that a blood draw would demonstrate that a crime had been committed.

I would reverse the ruling and remand with instructions to grant the Motion to Suppress.