# FOR PUBLICATION



FILED
May 24 2013, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK A. FOSTER**
Foster, O'Daniel, Hambidge
& Lynch, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL HASSFURTHER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  26A01-1208-CR-350 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE GIBSON SUPERIOR COURT
The Honorable Earl G. Penrod, Judge
Cause No. 26D01-1107-FD-107

### OPINION-FOR PUBLICATION

**May 24, 2013**

**BAKER, Judge**

In this case, the appellant-defendant Paul Hassfurther appeals the trial court's denial of his petition for judicial review that involved his refusal to take a chemical test for intoxication. Hassfurther argues that the arresting officer lacked probable cause to believe that he was operating a vehicle while intoxicated. Hassfurther further maintains that the evidence was insufficient to support the trial court's determination that he knowingly refused to take the chemical test because he was not properly advised of the consequences of his refusal to take such a test.

The evidence established that a citizen informant called 911, identified herself, and reported that she had followed a suspected drunk driver, who was later identified as Hassfurther, operating a Toyota truck with the logo of a fox on the back of it, to a local gas station. A police officer approached Hassfurther in the store and saw him leaning on the counter. Hassfurther smelled strongly of alcohol, his speech was slurred, and his eyes were red. This evidence, coupled with Hassfurther's admission to the police officer that he had been drinking and was the driver of the Toyota, established probable cause that Hassfurther had been operating the vehicle while intoxicated.

The evidence was also sufficient to establish that Hassfurther knowingly refused to take a chemical test for intoxication when the police officer testified that he advised Hassfurther under the implied consent law that a two-year driver's license suspension would result in light of a prior conviction for driving while intoxicated if he refused to take a chemical test for intoxication. Thus, we conclude that the trial court properly denied Hassfurther's petition for judicial review.

2

On July 15, 2011, Lieutenant Timothy Gaines, an officer with the Oakland City Police Department, was dispatched to the Shell Mart in Gibson County "in reference to a possible drunk driver." Tr. p. 6.[2] Bonita Walton had telephoned the police department's dispatcher and reported that she had followed a Toyota Tundra truck to the local Shell Mart where she observed a male exit the vehicle and enter the store. Walton told the dispatcher that the vehicle had a logo of a fox on the back of it. Walton also described the driver of the truck as a white male with dark hair.

At approximately 6:00 a.m., Lieutenant Gaines drove into the Shell Mart and observed a vehicle matching Walton's description. Lieutenant Gaines ran the license plate and walked inside the store to make contact with the driver, who was subsequently identified as Hassfurther. Lieutenant Gaines approached Hassfurther and saw him "leaning, almost laying," on the store's checkout counter. Tr. p. 8. Lieutenant Gaines asked Hassfurther if he was driving the Toyota Tundra that was parked outside. Hassfurther acknowledged that he had been driving that vehicle and Lieutenant Gaines noticed a strong odor of alcohol on Hassfurther's breath. Lieutenant Gaines also

---

[1] We heard oral argument on April 18, 2013, in the courtroom of the Indiana Supreme Court. We would like to thank counsel for their presentations and the Indiana University Robert H. McKinney School of Law LLM students who attended the argument for their presence and respectful demeanor. Additionally, we want to express our appreciation to the administration, technology support, and staff of the Indiana Supreme Court for their assistance.

[2] Defense counsel stated at oral argument that the caller reported to the police dispatcher that she observed Hassfurther driving "erratically."

determined that Hassfurther's speech was slurred and his eyes were red. Hassfurther admitted to Lieutenant Gaines that he "had been drinking the night before." Id.

Lieutenant Gaines asked Hassfurther if he would submit to a portable breath test (PBT). Hassfurther refused, and Lieutenant Gaines read to Hassfurther from an implied consent card, which provided:

> Implied consent warning. I have probable cause to believe you've operated a vehicle while intoxicated. I must now offer you the opportunity to submit to a chemical test and inform you that your refusal to submit to a chemical test will result in the suspension of your driving privileges for one year. Will you now take the chemical test?

Tr. p. 10, 19-20. Hassfurther again refused. Even though Hassfurther admitted to Lieutenant Gaines that he had been driving the vehicle, after Lieutenant Gaines again read from the implied consent card and stated that he believed that Hassfurther had been driving, Hassfurther responded, "well, you didn't see me driving." Id. at 10. Hassfurther then stated that he would take a PBT for a public intoxication charges but not for driving while intoxicated. Lieutenant Gaines explained the implied consent law and told Hassfurther that refusing to take the test would result in an automatic suspension of his driver's license. At that point, Hassfurther agreed to take a PBT, which detected the presence of alcohol.

Lieutenant Gaines handcuffed Hassfurther and transported him to the Gibson County Jail. Hassfurther told Lieutenant Gaines that someone could travel to the Shell Mart and remove his truck from the premises.

4

After Lieutenant Gaines had taken Hassfurther to the booking room at the jail, Hassfurther was again informed of the contents of the implied consent card. Lieutenant Gaines also advised Hassfurther at that time that refusal along with a prior conviction for driving while intoxicated would result in a two-year license suspension. Hassfurther again informed the officers that he would take a chemical test for public intoxication but not for operating a vehicle while intoxicated. Lieutenant Gaines told Hassfurther that he was being charged with operating a vehicle while intoxicated, at which point Hassfurther stated that he "was not taking any test." Tr. p. 13.

The State charged Hassfurther with operating a vehicle while intoxicated, and it further alleged that Hassfurther knowingly refused to take a chemical test for intoxication. On July 27, 2011, the trial court contacted the Bureau of Motor Vehicles (BMV) and notified it of Hassfurther's probable cause license suspension. Thereafter, Hassfurther filed a petition for judicial review, alleging that Lieutenant Gaines did not have probable cause to believe that Hassfurther had operated a vehicle while intoxicated when Lieutenant Gaines offered him a chemical test for intoxication, that he was not properly advised of his implied consent rights, and that he did not knowingly refuse the chemical test for intoxication.

Following a hearing on the petition, the trial court denied Hassfurther's request, determining that Lieutenant Gaines had probable cause to believe that Hassfurther operated a vehicle while intoxicated, and that the implied consent advisement was proper

5

to support a finding that Hassfurther knowingly refused to take the chemical test. Hassfurther now appeals the denial of his petition for judicial review.

## DISCUSSION AND DECISION

### I. Probable Cause

Hassfurther contends that the evidence was insufficient to support the trial court's finding that Lieutenant Gaines had probable cause to believe that Hassfurther was operating a vehicle while intoxicated. Specifically, Hassfurther argues that his petition for judicial review should have been granted because Lieutenant Gaines did not see him driving and Walton's "information lacked sufficient specificity to be considered credible." Appellant's Br. p. 4.

In addressing Hassfurther's contentions, we initially observe that Indiana Code section 9-30-6-8 provides that

(a) Whenever a judicial officer has determined that there was probable cause to believe that a person has violated IC 9-30-5, IC 35-46-9, or IC 14-15-8 (before its repeal), the clerk of the court shall forward:

(1) a copy of the affidavit; and

(2) a bureau certificate as described in section 16 of this chapter; to the bureau.

(b) The probable cause affidavit required under section 7(b)(2) of this chapter must do the following:

(1) Set forth the grounds for the arresting officer's belief that there was probable cause that the arrested person was operating a vehicle in violation of IC 9-30-5. . . .

6

(2) State that the person was arrested for a violation of IC 9-30-5. . . .

(3) State whether the person:

    (A) refused to submit to a chemical test when offered; or

    (B) submitted to a chemical test that resulted in prima facie evidence that the person was intoxicated.

(4) Be sworn to by the arresting officer.

Our review of the trial court's judgment denying a defendant's petition for judicial review of a chemical breath test refusal is limited. Specifically, we may determine whether the arresting law enforcement officer had probable cause to believe that the individual was operating a vehicle while intoxicated, and whether the driver refused to submit to a chemical test offered by a law enforcement officer after being informed of the consequences of such a refusal. Upchurch v. State, 839 N.E.2d 1218, 1220 (Ind. Ct. App. 2005). In doing so, we will not reweigh the evidence or judge the credibility of the witnesses, and we will consider only the evidence favorable to the trial court's decision. Id.

A law enforcement officer has probable cause to offer a chemical test for intoxication when the officer has knowledge of facts and circumstances that would lead a reasonably prudent person to believe that the crime of operating a vehicle while intoxicated has been committed. Gibson v. State, 518 N.E.2d 1132, 1136 (Ind. Ct. App. 1988); I.C. § 9-30-6-2(a). We have previously determined that "[o]bjectively observed

7

clear indications of intoxication include dilated pupils, bloodshot eyes, glassy eyes, and the odor of alcohol on the person's breath." Frensemeier v. State, 849 N.E.2d 157, 162 (Ind. Ct. App. 2006). Probable cause requires only the probability that criminal activity has occurred. Jellison v. State, 656 N.E.2d 532, 534 (Ind. Ct. App. 1995).

In instances that involve a concerned citizen's report of a possible drunk driver, we have held:

> [W]hen an officer receives a dispatcher's message, he has no reason to question the source or credibility. Too, the circumstances suggest urgency and a need for immediate action on the part of the officer. Reasonableness of the investigative stop should be given the utmost scrutiny by the trial court.

Bogetti v. State, 723 N.E.2d 876, 880 (Ind. Ct. App. 2000).

As discussed above, the evidence established that Lieutenant Gaines responded to a dispatch of a possible drunk driver who was operating a Toyota Tundra with an emblem of a fox on the back of the vehicle. Tr. p. 6-7. Walton identified herself to the dispatcher, described the truck and the driver, and reported that she followed the vehicle to the Shell Mart. Walton also reported that she observed the driver walk into the Shell Mart. Id.

When Lieutenant Gaines arrived at the Shell Mart, he noticed a Toyota Tundra truck parked in the lot that matched Walton's description. Id. at 7, 8. No other vehicles in the lot fit that description. Thus, Walton's information that the truck was driven to that location was corroborated and there was, therefore, indication that the remaining information in her report was reliable and credible. See Lampkins v. State, 682 N.E.2d

8

1268, 1271-72 (Ind. 1997) (observing that a tip was reliable when police officers were able to identify a vehicle that matched the description that an informant had provided them), modified on other grounds, 685 N.E.2d 698 (Ind. 1997).

When Lieutenant Gaines encountered Hassfurther at the store, Hassfurther admitted that he was the driver of the Toyota Tundra. Tr. p. 8. Hassfurther also told Lieutenant Gaines that he "had been drinking the night before." Id. Lieutenant Gaines noticed that Hassfurther's speech was slurred, he smelled strongly of alcohol, and had bloodshot eyes.

In sum, the information that the dispatcher received from Walton, Lieutenant Gaines's observations of the vehicle and Hassfurther's demeanor at the Shell Mart, and Hassfurther's admissions, were sufficient to establish that Lieutenant Gaines had probable cause to believe that Hassfurther was operating the vehicle while intoxicated. Hence, there was also probable cause for Lieutenant Gaines to offer Hassfurther a chemical test for intoxication. As a result, Hassfurther's challenges to the determination of probable cause fail.

## II. Implied Consent

Hassfurther next argues that the trial court erroneously determined that he knowingly refused to take the chemical test in accordance with the implied consent laws. More particularly, Hassfurther argues that he did not "knowingly" refuse to take a chemical test for intoxication because he was not advised that his driver's license would be suspended for two years if he did not agree to take such a test. Appellant's Br. p. 6.

9

We first note that Indiana Code section 9-30-6-7(a) provides that "[i]f a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges."

Although this statute does not specify the length of time of the suspension, Indiana Code section 9-30-6-9 states:

> (b) If the affidavit under section 8(b) [9-30-6-8(b)] of this chapter states that a person refused to submit to a chemical test, the bureau shall suspend the driving privileges of the person:
>
> (1) for:
>
> > (A) one (1) year; or
> >
> > (B) if the person has at least one (1) previous conviction for operating while intoxicated, two (2) years; or
>
> (1) until the suspension is ordered terminated under IC 9-30-5.

In State v. Huber, 540 N.E.2d 140, 141 (Ind. Ct. App. 1989), a panel of this court determined that a police officer is required to advise a defendant of the consequences of refusing to submit to a chemical test before the refusal to take the test will result in a suspension of driving privileges. In Huber, we affirmed the trial court's removal of a license suspension from the defendant's driving record based on the refusal to take a breath test because the police officer had informed the defendant that his driver's license "may," rather than "shall," be suspended for one year if he refused to take the test. Id.; see also Vetor v. State, 688 N.E.2d 1327, 1328 (Ind. Ct. App. 1997) (holding that if an individual was not advised that his or her driver's license would be suspended if a

10

chemical test for intoxication was refused, there was no valid implied consent warning and the license could not be suspended).

In this case, because Hassfurther has a prior conviction for operating a vehicle while intoxicated, Indiana Code section 9-30-6-9(b) makes it clear that Hassfurther's license would be suspended for two years rather than one. That said, while Hassfurther maintains that his refusal to take the breath test was not knowing because the advisements on the implied consent card contained no information about a two-year suspension in light of a prior conviction, Lieutenant Gaines testified at the hearing that he did, in fact, advise Hassfurther of that consequence. Tr. p. 20. Thus, the evidence when viewed in a light most favorable to the judgment, demonstrates that Hassfurther has failed to show that he was not adequately informed about the license suspension if he refused a chemical test. As a result, the trial court properly denied Hassfurther's petition for judicial review.

The judgment of the trial court is affirmed.[3]

RILEY, J., and BAILEY, J., concur.

---

[3] As an aside, we note that because the evidence established that Lieutenant Gaines advised Hassfurther of a two-year suspension if he refused to take the chemical test, we need not address Hassfurther's contention that he was misled or misinformed about the length of his suspension even though the two-year provision was not set forth on the implied consent card. Moreover, the rule in Huber suggests only that a defendant must be informed of the consequence that a refusal will result in a suspension. 540 N.E.2d at 142. And there is no express statutory requirement that law enforcement officials must inform a defendant that a refusal will result in a two-year suspension if he or she has a prior conviction for operating a vehicle while intoxicated. I.C. § 9-30-6-9. Nonetheless, these circumstances suggest that it may well be the better practice for police departments to include the two-year suspension provision on the implied consent card.

11