## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 16 2017, 6:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Bart M. Betteau
Betteau Law Office, LLC
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Jason Hubler,

*Appellee-Defendant.*

November 16, 2017

Court of Appeals Case No.
22A01-1706-CR-1329

Appeal from the Floyd Superior Court

The Honorable James B. Hancock, Judge

Trial Court Cause No.
22D02-1603-CM-656

**Bailey, Judge.**

# Case Summary

[1] The State appeals the trial court's order suppressing evidence obtained from an investigation of whether Jason Hubler ("Hubler") operated a vehicle while intoxicated, endangering a person, a Class A misdemeanor,[1] and whether he operated a vehicle with an alcohol concentration equivalent ("ACE") of .15 or more, a Class A misdemeanor.[2]

[2] We reverse.

# Issues

[3] The State raises the following two issues on appeal:

> I.  Whether Hubler was entitled to *Miranda* warnings.
>
> II.  Whether probable cause existed to offer Hubler a chemical test.

# Facts and Procedural History

[4] At approximately 12:20 p.m. on March 26, 2016, New Albany police officers arrived at the scene of two adjacent collisions on Charlestown Road. The second collision occurred when two vehicles traveling southbound on

---

[1] Ind. Code § 9-30-5-2(a).

[2] I.C. § 9-30-5-1(b).

Charlestown Road entered the northbound lane to pass the first accident scene. The first passing vehicle was able to return safely to the southbound lane after clearing the accident, but the second vehicle collided with Hubler's northbound vehicle.

[5] Officer Eric May ("Officer May") of the New Albany Police Department investigated Hubler's collision. Officer May approached Hubler, who was standing by his vehicle, and asked Hubler for his driver's license and registration. Officer May also asked Hubler how the collision had occurred. Officer May observed that Hubler had glassy eyes, unsteady balance, and slurred speech, and he detected a strong odor of alcohol coming from Hubler. Officer May's observations led him to believe that Hubler was intoxicated. Officer May then asked Hubler to submit to field sobriety tests. Hubler submitted to the horizontal gaze nystagmus test and failed with all six clues indicating evidence of intoxication. Hubler informed Officer May that he could not take the "walk and turn" field sobriety test because Hubler had a "bad back." Tr. at 22, 38-39. Hubler stated that he thought he could do the "one leg stand" test, and he attempted to do so. *Id*. at 22, 39. However, Officer May stopped the test after less than five seconds for Hubler's safety after Hubler put his foot down three times.

[6] Based on his investigation, Officer May informed Hubler of Indiana's implied consent law and offered him a certified chemical test. Hubler agreed to a chemical test and went to the Floyd County jail for testing. Subsequent testing indicated that Hubler had an ACE of .240. On March 28, the State charged

Hubler with operating a vehicle while intoxicated endangering a person and operating a vehicle with an ACE of .15 or more.

[7] On January 6, 2017, Hubler moved to suppress "as evidence any and all items seized" as a result of the State's allegedly unconstitutional "search and/or seizure." Appellant's App. at 48-49.[3] Hubler also submitted additional authority, contending *State v. Moore*, 723 N.E.2d 442 (Ind. Ct. App. 2000), required that the observed signs of his intoxication must be suppressed because he was not given *Miranda* warnings. At the March 14 hearing on the motion to suppress, New Albany Police Officers May and Mike Isom ("Officer Isom") testified. Officer Isom testified that he was one of the first few officers to arrive at the scene of the collisions, and he began directing traffic. Officer Isom also interviewed two witnesses who had been watching Hubler's collision from adjacent apartments. The witnesses stated that Hubler was traveling northbound at a speed "well over the speed limit," quickly decelerated as he approached the oncoming traffic in his lane, and then collided. Tr. at 8. Officer Isom saw Hubler standing next to his vehicle but Officer Isom was approximately twenty-five yards away and could not get "a clear assessment as to what [Hubler's] physical condition was" from that distance. *Id.* at 9. Officer Isom testified that, from a distance, Hubler did not appear to him to be

---

[3] Hubler's motion also requested specific findings pursuant to Indiana Trial Rule 52. The trial court failed to issue specific findings. However, as neither party raises that issue on appeal, we do not address it.

unsteady as he stood next to his vehicle, and he did not observe any signs that Hubler was intoxicated.

[8] Officer May also testified at the suppression hearing. He testified that the driver of the car who hit Hubler's car was the "primary cause" of the collision. *Id*. at 23. He also testified that Hubler's eyes could have appeared glassy due to allergies or "a million different things." *Id*. at 27. Officer May testified that Hubler had "moderate slurring of words" and that Officer May could detect a strong odor of alcohol. *Id*. at 30. Officer May admitted that he did not include the slurred speech or smell of alcohol in his police report. Officer May also admitted that he had no way of "knowing whether or not [Hubler's] back injury interfered" with his ability to perform the one leg stand sobriety test. *Id*. at 39. And Officer May testified that he administered the nystagmus test by telling Hubler to visually follow the officer's finger as he moved it in an arc, rather than in a straight line, from Hubler's eye level to his ear.

[9] The trial court granted Hubler's motion to suppress, and the State appeals that order.[4]

---

[4] The State may appeal an order granting a motion to suppress evidence "if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment." I.C. § 35-38-4-2(5). The effect of suppressing evidence that Hubler appeared intoxicated and the results of the chemical test is to preclude further prosecution of both the driving while intoxicated, endangering a person, charge and the charge of operating a vehicle with an ACE of .15 or more.

# Discussion and Decision

## Standard of Review

Our standard of review of an order granting a motion to suppress evidence is well-settled:

> We review a trial court's decision to grant a motion to suppress as a matter of sufficiency. *State v. Moriarity*, 832 N.E.2d 555, 557–58 (Ind. Ct. App. 2005). When conducting such a review, we will not reweigh evidence or judge witness credibility. [*Id.*] at 558. In such cases, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *State v. Estep*, 753 N.E.2d 22, 24–25 (Ind. Ct. App. 2001). This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* at 25.

*State v. Owens*, 992 N.E.2d 939, 941-42 (Ind. Ct. App. 2013), *trans. denied*.

## *Miranda* Warnings Not Required

In his motion to suppress, Hubler argued that the evidence of his intoxication must be suppressed because it was obtained in violation of his right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution and Article 1, Section 11, of the Indiana Constitution.[5] Specifically, he first argued that the evidence must be suppressed

---

[5] Although Hubler's motion to suppress cited both the federal and state constitutional provisions, neither party cites authority or separate argument as to Article 1, § 11 of the Indiana Constitution on appeal.

because the officer did not give Hubler his *Miranda* warnings prior to conducting a custodial interrogation of Hubler. Appellant's App. at 62.

> In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." These procedural safeguards include an advisement to the accused that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that if he cannot afford an attorney one will be appointed for him. *Id*. at 479, 86 S.Ct. 1602. However, these warnings are only required where a suspect is both in custody and subjected to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

*State v. Necessary*, 800 N.E.2d 667, 669-70 (Ind. Ct. App. 2003).

[12] Officer May did not provide Hubler with the *Miranda* warnings. However, he was not required to do so because, even if Hubler was in custody (and we do not decide whether or not he was), Officer May did not interrogate Hubler. Not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980). Rather, "[u]nder *Miranda*, 'interrogation' includes express questioning and words or actions on the part of the police that the

---

Therefore, the separate state constitutional claim is waived. *See* Ind. Appellate Rule 46; *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015).

police know are reasonably likely to elicit an incriminating response from the suspect." *White v. State,* 772 N.E.2d 408, 412 (Ind. 2002). Here, after asking for Hubler's drivers' license and registration, the only questions Officer May asked Hubler were "how [did] the crash happen" and whether Hubler would agree to take some field sobriety tests.[6] Tr. at 19, 26. Those questions do not amount to "interrogation" for purposes of *Miranda*. *Wissman v. State*, 540 N.E.2d 1209, 1212 (Ind. 1989) ("Officer Schollian's general inquiry of what happened was for information, not a question used to elicit a confession from appellant. Thus this is not a case of custodial interrogation."); *see also Seeglitz v. State*, 500 N.E.2d 144, 146 (Ind. 1986) ("*Miranda* requirements are not applicable to general on the scene questioning in a noncoercive atmosphere.").[7] Nor was the administration of the field sobriety tests "interrogation" that would trigger *Miranda* requirements. *Necessary*, 800 N.E.2d at 670 ("[N]one of the *Miranda* warnings must be given to a defendant before the police administer FSTs [i.e., field sobriety tests].").

[13]     Moreover, Hubler made no incriminating statement that could be suppressed. "'[O]nly verbal statements preceding an advisement of *Miranda* rights that are

---

[6] The record discloses no evidence that Officer May asked Hubler if he had been drinking alcohol, as Hubler seems to suggest in his brief. Appellee's Br. at 14.

[7] *Moore v. State*, 723 N.E.2d 442 (Ind. Ct. App. 2000), cited by Hubler, is not to the contrary. Rather, this court held in that case that the defendant was not "interrogated" when the officer initially asked him "what happened in the accident" because, at that point, the officer was only questioning the defendant with the intent of eliciting information about a traffic accident, not incriminating information about a crime. *Id*. at 450. It was not until the officer believed a crime had happened that his following questions became interrogation. *Id*.

both testimonial in nature and elicited during custodial interrogation must be suppressed.'" *State v. Keller*, 845 N.E.2d 154, 161 (Ind. Ct. App. 2006) (quoting *Curry v. State*, 643 N.E.2d 963, 976 (Ind. Ct. App. 1994), *trans. denied*)). And, although *Miranda* may also protect responses that are nonverbal conduct, that conduct must, itself, be testimonial.

> "In order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Curry v. State*, 643 N.E.2d 963, 976 (Ind. Ct. App. 1994), *reh'g denied*, *trans. denied*. "[N]on verbal conduct contains a testimonial component whenever the conduct reflects the actor's communication of his thoughts to another." [*Pennsylvania v.*] *Muniz*, 496 U.S. [582,] 595 n.9, 110 S.Ct. 2638 [1990]."

*Smith v. State*, 829 N.E.2d 64, 75 (Ind. Ct. App. 2005).

[14] Here, Hubler's physical appearance (i.e., slurred speech, glassy eyes, unsteadiness, smelling of alcohol) was not in any way testimonial. *Id.* Nor was his conduct of failing the field sobriety tests and the chemical test "testimonial." *See, e.g.*, *Crump v. State*, 740 N.E.2d 564, 571 (Ind. Ct. App. 2000) (holding the odor of alcohol on the defendant's breath and the results of the breathalyzer test "was noncommunicative physical evidence."), *trans. denied*; *see also Smith v. State*, 496 N.E.2d 778, 783 (Ind. Ct. App. 1986) (quoting *Schmerber v. California*, 384 U.S. 757, 764 (1966)) (holding blood test, field sobriety test, and breathalyzer test results obtained without *Miranda* warnings are admissible since "[n]ot even a shadow of testimonial compulsion or enforced

communication by the accused" is involved in obtaining or analyzing such tests).

[15] In sum, the failure to provide Hubler with *Miranda* warnings was not a basis upon which to suppress evidence of his intoxication, including evidence of Officer May's observations of Hubler's physical appearance and behavior.[8]

## Probable Cause to Offer a Chemical Test

[16] Hubler argued to the trial court that, even if the police were not required to provide him with *Miranda* warnings, the results of the chemical test must be suppressed because the police lacked probable cause to offer such a test. The trial court agreed. However, because all reasonable inferences lead to the opposite conclusion, we reverse the order to suppress evidence obtained from the chemical test. *Owens*, 992 N.E.2d at 942.

[17] Indiana's implied consent law provides that "[a] law enforcement officer who has probable cause to believe that a person has committed a [driving while intoxicated] offense … shall offer the person the opportunity to submit to a chemical test." I.C. § 9-30-6-2(a). "A law enforcement officer has probable cause to offer a chemical test for intoxication when the officer has knowledge of facts and circumstances that would lead a reasonably prudent person to believe

---

[8] We note that the trial court did not state that its decision was based on the failure to provide *Miranda* warnings; in fact, the trial court did not state a reason for its decision at all or specify exactly what evidence it was suppressing. Appellant's App. at 65.

that the crime of operating a vehicle while intoxicated has been committed." *Hassfurther v. State*, 988 N.E.2d 811, 815 (Ind. Ct. App. 2013). "Objectively observed clear indications of intoxication include dilated pupils, bloodshot eyes, glassy eyes, and the odor of alcohol on the person's breath." *Frensemeier v. State*, 849 N.E.2d 157, 162 (Ind. Ct. App. 2006), *trans. denied*. Moreover, the fact that a defendant smells strongly of alcohol, alone, provides sufficient probable cause to offer a chemical test. *Dalton v. State*, 773 N.E.2d 332, 334 (Ind. Ct. App. 2002), *trans. denied*.

[18] Here, Officer May's observations of Hubler at the scene of the accident provided probable cause to believe that Hubler had been driving while intoxicated and should be offered a chemical test. Officer May testified that he detected a strong odor of alcohol on Hubler, and that observation, *alone*, provided probable cause to offer the chemical test. *Id*. However, that was not the only evidence of Hubler's intoxication; Officer May also observed that Hubler had slurred speech, glassy eyes, and unsteady balance. While Officer May failed to include some of those observations in his report, his testimony as to what he observed was not contradicted by his police report. Nor were Officer May's observations contradicted by Officer Isom, who testified that he was too far away from Hubler to accurately assess Hubler's physical condition at the scene of the accident. Because all reasonable inferences from the evidence lead to the conclusion that there was probable cause to offer Hubler a chemical test, the trial court's order suppressing the results of that test were contrary to law.

# Conclusion

The police were not required to provide Hubler with *Miranda* warnings prior to observing evidence of his physical appearance and behavior at the scene of the accident because they did not interrogate Hubler to obtain such evidence and such evidence was not testimonial. Thus, to the extent the trial court ordered suppression of the officers' observations of Hubler, we reverse. Moreover, there was probable cause for Officer May to offer Hubler the chemical test; Officer May's detection of the strong odor of alcohol on Hubler was, alone, sufficient to establish probable cause. *Id*. Therefore, we reverse the trial court's ruling suppressing evidence of the results of the chemical test as it was contrary to law.

Reversed.

Baker, J., and Altice, J., concur.