William A. STEWARD, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 69A05–9308–CR–311.

Court of Appeals of Indiana, Fifth District.

Aug. 18, 1994.

Ralph E. Randall, Scottsburg, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office Of Attorney General, Indianapolis, for appellee.

BARTEAU, Judge.

William A. Steward appeals the trial court's finding that he refused to submit to a chemical test for intoxication in connection with a traffic stop. Steward raises three issues on appeal. Because we reverse, we address only the issue whether a chemical test is "offered" and refused under the Indiana Implied Consent Law when a driver is asked to provide a urine sample to the arresting officer at the jail where the driver

is being held, and the driver does not provide the sample.

## FACTS

On Friday, April 9, 1993, Steward was stopped by Indiana State Police officer Marcia Dodge on a state highway in Ripley County because one of his headlights was out. Officer Dodge detected the odor of marijuana, then observed a hemostat with part of a burned marijuana cigarette attached lying on the floor of the car. Officer Dodge noted that Steward had red and glassy eyes, and was "slow moving," but she did not perform any field sobriety tests nor offer a breathalyzer test. There was testimony at the evidentiary hearing that the presence of marijuana can be detected by urine analysis, but not by analysis of breath or blood.

Steward was arrested for possession of marijuana and transported to the Ripley County jail, where Officer Dodge asked a male jailer to monitor Steward as he produced a urine sample. Steward agreed to provide the sample, but did not do so during the three hour time period within which an accurate sample could be taken, saying he was "nervous" and unable to urinate. He was later charged with driving while intoxicated based on his alleged refusal to submit to a chemical test.

## DISCUSSION

The Indiana Implied Consent Law provides that a law enforcement officer who has probable cause to believe a person is operating a vehicle while intoxicated shall offer the person the opportunity to submit to a chemical test. Ind.Code 9–30–6–2(a). The test must be administered within three hours after the officer has probable cause to believe the person was operating a vehicle while intoxicated. I.C. 9–30–6–2(c). A "chemical test" is an analysis of breath, blood, urine, or other bodily substances in order to determine the presence of alcohol, drugs, or controlled substances. I.C. 9–13–2–22.

The Bureau of Motor Vehicles is required to suspend a person's driving privileges for

refusal to submit to a chemical test. I.C. 9–30–6–9. A trial court's finding of refusal to submit to a chemical test is an appealable final judgment, I.C. 9–30–6–10(g), and our review is limited to whether the evidence is sufficient as a matter of law to support the finding that the arresting officer had probable cause to stop the driver, and that the driver refused to submit to a chemical test. *Thacker v. State* (1982), Ind.App., 441 N.E.2d 708, 710.

■ The State does not address nor argue Steward's issue whether a police officer is a "qualified person" to take a urine sample, contending only that that issue is not within the scope of our permissible judicial review under *Thacker.* We disagree. A chemical test cannot be "refused" unless it is "offered;" thus, the propriety of the offer of a chemical test is relevant to the issue of whether it is refused. *See Zakhi v. State* (1990), Ind.App., 560 N.E.2d 683, 686 (to establish adequate "refusal," arresting officer must inform the accused of the consequences of refusal to take the test); *Gibbs v. State* (1983), Ind.App., 444 N.E.2d 893, 895, *reh'g denied* (driver who would not take a field sobriety test or a breathalyzer test did not "knowingly refuse to submit" to a chemical test because she was not properly informed of the implied consent law and of the consequences of refusal to submit).[1]

■ Steward was not properly offered a chemical test. Obtaining samples and performing chemical testing of urine, blood and other "bodily substances" are governed by I.C. 9–30–6–6. That section provides in part that when a law enforcement officer transports a person to a place other than a hospital, a urine sample may be obtained

... by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:

(1) A physician holding an unlimited license to practice medicine or osteopathy.

(2) A registered nurse.

(3) A licensed practical nurse.

(4) An advanced emergency medical technician (as defined in IC 16–18–2–6).

(5) A paramedic.

I.C. 9–30–6–6(j).[2] The statute also requires persons authorized to obtain samples of urine or other bodily substances to do so in a "medically accepted manner." I.C. 9–30–6–6(i).

Steward was not transported to a hospital after his arrest, but was taken to the Ripley County jail. At the jail, Officer Dodge, a female, arranged for a male jailer to monitor Steward while he provided a urine sample. Aside from prisoners, the only persons present at the jail when Steward was to provide the sample were Steward, Officer Dodge, the jailer, and Steward's daughter who was a passenger in his car. Neither Officer Dodge nor the jailer was a doctor, nurse, advanced emergency medical technician, or paramedic. No other person authorized to take a urine sample under I.C. 9–30–6–6(j) was called to the jail during the three hour period during which the chemical test could have been administered. As such, Officer Dodge's "offer" of a urine test was illusory because no one authorized by statute to take a urine sample was present at the jail, no authorized person was called to the jail to take a sample, and Steward was not transported to a facility where a sample could properly be taken.

---

1. When *Gibbs* was decided, the implied consent law required refusal of a chemical test to be made "knowingly" or to be a result of the accused's intoxication. I.C. 9–4–4.5–4(e). The implied consent law has since been substantially revised, and there is no longer a *mens rea* requirement. *Zakhi v. State* (1990), Ind.App., 560 N.E.2d 683, 686.

2. When the person from whom the sample is to be obtained is transported to a hospital, a urine,

blood, or other bodily substance sample is to be taken by a "physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician...." I.C. 9–30–6–6(g).

A breath test, unlike a test involving the taking of samples of blood, urine, or other bodily substances, may be taken by anyone certified as a "breath test operator" by the State Department of Toxicology. I.C. 9–30–6–5.

The State correctly notes, citing *Zimmerman v. State* (1984), Ind.App., 469 N.E.2d 11, that I.C. 9–30–6–6 does not create any rights on behalf of criminal defendants, but instead functions as a limitation on a defendant's right to invoke the physician-patient privilege as a means of excluding evidence of the test results at trial. However, *Zimmerman* nowhere suggests the State may ignore the plain language of the statute to allow blood or urine tests to be taken by persons not authorized by law to do so:

> Thus, the statute does not create any rights in the criminal defendant, and in fact limits the defendant's right to invoke the physician-patient privilege to prevent the disclosure of blood alcohol results, which might otherwise be construed as being privileged information. Nothing in the statute indicates it was intended to restrict the ability of a law enforcement official *to order hospital personnel* to draw a blood sample for purposes of analysis by a state law enforcement agency.

*Id.* at 19 (emphasis added).

When the "chemical test" offered under the implied consent statute requires a sample of "blood, urine, or other bodily substance," the legislature has placed explicit limitations upon who may conduct the test a police officer has "offered" to the driver. Because Steward was not taken to a facility where such a test could be properly performed, nor was anyone who was authorized to obtain a urine sample brought to the jail while Steward was held there, he was never offered "the opportunity to submit to a chemical test" as required by the Implied Consent law, I.C. 9–30–6–2, and thus could not have refused the test.

REVERSED.

RUCKER and HOFFMAN, JJ., concur.