James R. DALTON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–0201–CR–33.

Court of Appeals of Indiana.

Aug. 16, 2002.

Earl McCoy, Law Office of Patrick Harrington, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

James R. Dalton appeals the trial court's denial of relief pursuant to judicial review of his breath test refusal.

We affirm.

### ISSUE

Whether the trial court erred in denying Dalton's motion to reinstate his driver's license.

### FACTS

On the night of August 31, 2001, Tippecanoe County Deputy Sheriff Robert Hainje responded to a dispatch to investigate a single automobile crash involving Dalton. Dalton had driven his vehicle off the right side of the road into a ditch where it had struck a concrete drainage structure and caught fire. When police officers arrived on the scene, Dalton fled on foot, but he was apprehended by Hainje. Hainje testified that Dalton smelled strongly of alcohol, had red, watery eyes, and slurred his speech. His clothes were soiled and in disarray. Hainje asked Dalton for identification, but Dalton could only fumble with some items in his pocket and drop them. Dalton was extremely abusive and profane throughout the encounter.

Dalton failed three field sobriety tests and a portable breath test. He did, however, pass the vertical gaze nystagmus test, designed to determine whether a suspect is under the influence of certain categories of drugs.

Hainje read Dalton the Indiana Implied Consent Advisement and asked him to take a chemical test. Dalton refused the test, demanding his attorney. After he was advised that he would be placed under arrest for refusal, Dalton agreed to take the test. Hainje informed Dalton that he would be transported to a hospital for the chemical test, but Dalton refused. He agreed, however, to take a breathalyzer test. The test results revealed an alcohol concentration equivalent (ACE) to .06%. Hainje's experience as a police officer, his personal observations of Dalton and Dalton's behavior under the circumstances, and the fact that he was a trained drug recognition expert led him to believe that the breathalyzer test result was inconclusive in explaining Dalton's uncooperative behavior. At that moment, he was unable to exclude that Dalton was not under the influence. He believed that Dalton might be under the influence of drugs other than alcohol that he could not determine at the scene. As a result, Hainje asked Dalton to take a blood and urine test and read the Implied Consent Advisement again to Dalton. Dalton refused to take these tests, and Hainje subsequently arrested Dalton for chemical test refusal. At his initial hearing, the trial court found probable cause that Dalton refused to take a chemical test and the Bureau of Motor Vehicles suspended his license accordingly. Dalton is appealing from the denial of reinstate-

ment of his driving license after judicial review by the trial court.

## DECISION

■ Indiana law provides that a person whose driving privileges have been suspended for refusal to submit to a chemical test "is entitled to a prompt judicial hearing." Ind.Code § 9–30–6–10(a). In a judicial review hearing on an implied consent test refusal, the defendant has the burden of proof by a preponderance of the evidence to establish his grounds for relief. Ind.Code 9–30–6–10(f). Because Dalton did not sustain his burden of proof in the judicial review hearing, appellate review is limited to determining only whether the evidence is sufficient as a matter of law to support the trial court's decision. *See Timmons v. State*, 723 N.E.2d 916, 922 (Ind.Ct.App.2000), *vacated in part on reh'g* 734 N.E.2d 1084, *trans. denied.*

Under Indiana's Implied Consent law, any person driving on the state's roads impliedly consents to submit to each chemical test offered by a law enforcement officer. Ind.Code § 9–30–6–2. The provisions of the Implied Consent law only apply where the officer has probable cause to believe that a person has committed an offense such as operating a vehicle while intoxicated. I.C. § 9–30–6–2(a).

■ Dalton argues that Hainje did not have probable cause to offer him a chemical test. We disagree.

■ A law enforcement officer has probable cause to offer a chemical test where the officer has knowledge of facts and circumstances that would lead a reasonably prudent person to believe that the crime of operating a vehicle while intoxicated has been committed. *Gibson v. State*, 518 N.E.2d 1132, 1136 (Ind.Ct.App. 1988), *trans. denied.* The evidence shows that Dalton had crashed his car, then fled the scene. He smelled of alcohol and had bloodshot eyes, and slurred speech. Dalton only fumbled with some items in his pocket and dropped them when asked for identification. He failed three field sobriety tests and a portable breath test. Dalton's clothing was soiled and in disarray, and he had an abusive attitude toward Hainje. The fact that Dalton smelled strongly of alcohol, alone, provided sufficient probable cause to at least offer Dalton a chemical test. *See State v. Johnson*, 503 N.E.2d 431, 432 (Ind.Ct.App.1987), *trans. denied.* Based on these facts, we find there was sufficient probable cause for Hainje to offer Dalton a test to determine whether he was intoxicated.

Hainje administered a breathalyzer test because Dalton did not want to go to the hospital for a chemical test. Even though Dalton's ACE was only .06%, this did not eliminate probable cause that he was operating his vehicle under the influence of a controlled substance. While the .06% test result indicated that Dalton was not intoxicated with alcohol, Hainje, a trained drug recognition expert, believed that Dalton might be under the influence of some other drug. Hainje did not believe the .06% ACE result was consistent with his observations of Dalton's condition and behavior. Because Dalton was abusive and refused to cooperate, Hainje was unable to carry out a drug recognition examination. Hainje then offered Dalton the additional chemical test to which Dalton refused.

■ Probable cause requires only the probability of criminal activity had occurred. *Jellison v. State*, 656 N.E.2d 532, 534 (Ind.Ct.App.1995). The facts set out above that gave Hainje probable cause to believe that Dalton was driving while intoxicated remain significant even after the breathalyzer test. Even though Dalton was not intoxicated on alcohol, there was still other circumstantial evidence to war-

rant a reasonably prudent person to believe that Dalton was operating his vehicle while under the influence of some type of a controlled substance.

Dalton argues that because he tested negative on the vertical gaze nystagmus test, the possibility of drug use was eliminated. As Hainje testified, however, a result from this test only does not completely eliminate the presence of all types of drugs. Probable cause is determined on the basis of the totality of circumstances. *Sebastian v. State*, 726 N.E.2d 827, 830 (Ind.Ct.App.2000), *trans. denied.* The totality of the circumstances herein, even after the breathalyzer results, provided sufficient evidence that Dalton may have operated his vehicle while under the influence of some type of a controlled substance; thus, because Hainje had probable cause to offer the second test, Dalton's refusal to submit to that test constituted a violation of the Implied Consent law.

■ Dalton gives three other arguments to justify his refusal of the offered chemical test. First, Dalton contends that the test is invalid because Hainje did not allow him to contact his attorney before deciding whether or not to submit to the test. However, a person who drives on Indiana's roads has no right to consult with an attorney prior to deciding whether or not to submit to a chemical test administered under the Implied Consent law, and the lack of such consultation does not affect the person's refusal of the offered test. *Zakhi v. State*, 560 N.E.2d 683, 686 (Ind.Ct.App. 1990).

■ Second, Dalton argues that Hainje misled him as to the number of tests he was required to take. Dalton testified that Hainje promised him he would be free to leave if the breath test turned out favorably. Hainje testified that he made no such promise to Dalton. It is not for the appellate court to judge the credibility of the witnesses, and this court considers only the evidence favorable to the trial court's judgment. *Timmons*, 723 N.E.2d at 922. Dalton is essentially asking us to reassess the credibility of the witnesses. This we will not do.

■ Finally, Dalton asserts that the offered blood or urine test was an illusory request because Hainje could not lawfully administer these tests. It is true that the offer of a chemical test would have been invalid if Hainje had proposed that he administer the test. *See Steward v. State*, 638 N.E.2d 1292 (Ind.Ct.App.1994). However, Hainje offered to transport Dalton to a hospital where appropriate personnel would have conducted the test. Thus, the offer was valid. The trial court did not err in denying Dalton's petition for reinstatement of his driver's license.

Affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I agree that Officer Hainje had probable cause to believe that Dalton was operating his vehicle under the influence of a controlled substance rather than under the influence of alcohol.

I do not, however, subscribe to the majority's view that because Dalton "may have" operated the vehicle while under the influence, such speculative conclusion provides the requisite probable cause. Officer Hainje must have had reasonable cause to believe that Dalton probably *in fact* did so. In the case before us Officer Hainje did have such reasonable cause.

Subject to this caveat, I concur.