Kenneth MONJAR, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 78A01–0704–CR–163.

Court of Appeals of Indiana.

Nov. 21, 2007.

Alison T. Frazier, Dupont, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Kenneth Monjar appeals his conviction for operating while intoxicated, a class D felony.[1]

We affirm.

### ISSUES

1.   Whether the trial court abused its discretion in admitting evidence.

2.   Whether the trial court erred in refusing a tendered jury instruction.

3.   Whether there is sufficient evidence to support the conviction.

### FACTS

At approximately 3:00 p.m. on February 15, 2006, Margaret Thorton, an employee at a CVS Pharmacy located in Vevay, observed Monjar as he came into the store. Monjar "stumbled," knocking items off of a shelf, and then "proceeded to the back of the store." (Tr. 38). When Monjar approached Thorton's register, she noticed that "he was trembling"; had "a strong odor of urine"; "was wet from his bottom down"; and "his eyes were bloodshot." (Tr. 38). When Thorton inquired whether Monjar "[w]as okay," Monjar put a bottle of Bacardi-brand rum on the counter and told her to "'take care of this....'" (Tr. 38). After completing his purchase, Monjar walked out of the store and into the parking lot, where Thorton saw him "stumbling to his vehicle." (Tr. 39). At that point, Thorton telephoned the police and reported what she had observed, including the direction in which Monjar was driving.

During this time, Nick Kitts, an officer with the Vevay Police Department, was patrolling in his police vehicle, accompanied by Officer John Pritchard, who was off duty. Officer Kitts received a dispatch regarding an intoxicated driver leaving the CVS parking lot. The dispatch included a description of the vehicle. Officer Kitts drove his police vehicle to a spot near the CVS and observed Monjar's vehicle exiting the parking lot. Officer Kitts initiated a traffic stop after Monjar failed to signal a turn.

Officer Kitts "[o]bserved a strong odor of an alcoholic beverage coming from inside the [v]ehicle" and that Monjar was "in a state of disarray. His [c]lothes were kind of sloppy, his hair was sloppy, [and he] had red, glassy eyes." (Tr. 49). Monjar denied having consumed any alcohol. Officer Kitts asked Monjar to step out of the vehicle; Monjar, however, left the vehicle running and failed to put his vehicle—which had a manual transmission—into gear. Thus, the vehicle started to roll forward when Monjar exited the vehicle. Officer Kitts had to tell Monjar to turn off the engine.

---

1.   Ind.Code § 9–30–5–3.

After Monjar stepped out of the vehicle, Officer Kitts could smell alcohol emanating from his person. Officer Kitts also noticed that Monjar's pants were wet and that there was "a distinct odor of urine...." (Tr. 50). Officer Kitts observed two bottles of Bacardi-brand rum in the front seat of Monjar's vehicle. One bottle was open, "and the other one was in a CVS bag on the passenger's side seat." (Tr. 54).

Monjar agreed to submit to field sobriety tests. Officer Kitts explained and demonstrated the "one leg stand," which required Monjar to stand with both feet together, with his arms at his sides, and then to "lift one leg [u]p off the ground approximately six inches, parallel with the ground," while counting to thirty. (Tr. 51).

Monjar "attempted to [d]o the test approximately two or three times, hardly getting his foot up off the [g]round, balancing himself with his arms and kept putting his foot down." (Tr. 51). Eventually, Monjar, who had had a tracheotomy, motioned that he was not going to continue with the test. Monjar also refused all other field sobriety tests.

Thereafter, Officer Kitts read Indiana's Implied Consent Advisement to Monjar. Monjar refused to take a test. Officer Kitts acknowledged that Monjar's tracheotomy prevented him from taking a breath test; thus, Officer Kitts asked Monjar whether he would consent to being transported to a hospital for a blood test. Monjar responded in the negative. Subsequently, Officer Kitts had Monjar transported to the Switzerland County jail.

At the jail, Monjar was taken to a room, which contained a B.A.C. Datamaster. Officer Kitts once again read Indiana's Implied Consent Advisement to Monjar. Officer Kitts also informed Monjar that he would "be willing to take him to the hospital for a[b]lood draw and [Monjar] said

'no[.]'" (Tr. 55). Officer Kitts then entered the time and Monjar's personal information into the B.A.C. Datamaster. Officer Kitts again repeated the advisement and offered to take Monjar to the hospital for a blood draw, to which Monjar again replied, "'No[.]'" (Tr. 56). Officer Kitts therefore entered into the B.A.C. Datamaster that Monjar had refused a chemical test.

On February 17, 2006, the State charged Monjar with operating a vehicle while intoxicated, a class D felony. A bifurcated jury trial commenced on November 14, 2006, after which the jury found Monjar guilty as charged. Following a sentencing hearing on December 29, 2006, the trial court sentenced Monjar to eighteen months with three months suspended.

Additional facts will be provided as necessary.

## DECISION

### 1. Admission of Evidence

██ Monjar asserts that the trial court abused its discretion when it admitted into evidence Monjar's refusal to submit to a chemical test.

> We note that the admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of that discretion. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor. As a rule, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. In determining

whether an evidentiary ruling affected a party's substantial rights, we assess the probable impact of the evidence on the trier of fact.

*Redding v. State,* 844 N.E.2d 1067, 1069 (Ind.Ct.App.2006) (internal citations omitted), *reh'g denied.*

Pursuant to Indiana Code section 9–30–6–2, a police officer, who has probable cause to believe that a person has committed an offense such as operating a vehicle while intoxicated, "shall offer the person the opportunity to submit to a chemical test." Ind.Code § 9–30–6–2(a). Under Indiana's Implied Consent law, any person driving on the state's roads impliedly consents to submit to each chemical test offered by a law enforcement officer. I.C. § 9–30–6–1. "[A] person's refusal to submit to a chemical test is admissible into evidence." I.C. § 9–30–6–3.

Citing to *Steward v. State,* 638 N.E.2d 1292 (Ind.Ct.App.1994), Monjar argues that he could not have refused a chemical test because one was not properly offered. In *Steward,* a female officer transported Steward to jail and requested that a male jailer monitor Steward as he provided a urine sample. Steward, however, was unable to produce a urine sample. Accordingly, Steward was charged with driving while intoxicated based on his alleged refusal to provide a urine sample for a chemical test.

Steward appealed the trial court's finding that he refused to submit to a chemical test. Steward maintained that the male jailer was not qualified to take the urine sample pursuant to Indiana Code section 9–30–6–6(j),[2] and he therefore was not offered a proper chemical test.

Noting that "the propriety of the offer of a chemical test is relevant to the issue of whether it is refused," this court determined that Steward could not have a refused a chemical test where he "was not taken to a facility where such test could be properly performed, nor was anyone who was authorized to obtain a urine sample brought to the jail while Steward was held there[.]" 638 N.E.2d at 1294–95. Because no personnel authorized to take a sample of Steward's urine were present, the " 'offer' of a urine test was illusory...." *Id.* at 1294.

Here, the record shows that officers did not take Monjar to a hospital or other facility for a blood draw and no personnel authorized to take a blood draw were present at the jail. The record, however, also shows that Officer Kitts asked Monjar whether he would consent to being transported to the local hospital for a blood draw. Monjar refused. After being transported to the jail, Officer Kitts twice more offered to transport Monjar to the hospital for a blood draw. Monjar refused both times.

■ Where a police officer offers to transport the defendant to the hospital for a chemical test, such an offer is valid and

---

**2.** Indiana Code section 9–30–6–6(j) provides when a law enforcement officer transports a person to a place for the collection of a bodily substance sample,

the sample may be obtained by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:
(1) A physician holding an unlimited license to practice medicine or osteopathy.

(2) A registered nurse.
(3) A licensed practical nurse.
(4) An emergency medical technician-basic advanced (as defined in IC 16–18–2–112.5).
(5) An emergency medical technician-intermediate (as defined in IC 16–18–2–112.7).
(6) A paramedic (as defined in IC 16–18–2–266).
(7) A certified phlebotomist.

not an illusory request. *Dalton v. State*, 773 N.E.2d 332, 335 (Ind.Ct.App.2002).[3] Given the facts of this case, we find no abuse of discretion in admitting Monjar's refusal to submit to a chemical test.

## 2. *Tendered Jury Instruction*

▆▆▆ Monjar asserts that the trial court abused its discretion in refusing a tendered jury instruction.

The trial court has broad discretion in the manner of instructing the jury and we review its decision thereon only for an abuse of that discretion. We review the refusal of a tendered instruction by examining whether the tendered instruction correctly states the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the tendered instruction is covered by other given instructions. Jury instructions are to be considered as a whole and in reference to each other. The ruling of the trial court will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights.

\* \* \*

▆▆▆ The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. In instructing a jury, the trial court has a statutory duty to state to the jury all

matters of law that are necessary for its information in giving its verdict.

*Snell v. State*, 866 N.E.2d 392, 395–96 (Ind.Ct.App.2007) (internal citations omitted).

Monjar tendered the following jury instruction: "In order for a chemical test to be properly offered, a person authorized by statute must be present at the jail, must be called to the jail to take the sample, or the defendant must be transported to a facility where a sample can properly be taken." (App.72).

Contrary to Monjar's argument, Indiana Code section 9–30–6–2 does not require a police officer to either transport a defendant to a facility where personnel authorized to draw blood are present or call a person authorized to draw blood to come to the defendant's location before a proper offer for a chemical test may be made. *See* I.C. § 9–30–6–2; *Dalton*, 773 N.E.2d at 335. Because Monjar's tendered instruction is an *incorrect statement* of law, we find that the trial court properly refused it.

## 3. *Sufficiency of the Evidence*

▆▆▆ Monjar asserts that the State failed to present sufficient evidence to convict him of operating a vehicle while intoxicated.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appel-

---

**3.** We find *Steward* distinguishable from *Dalton* because in *Steward*, even if the defendant had produced a sample, it would not have been properly obtained whereas in *Dalton*, as

well as in this case, the officer offered the defendant the opportunity to submit to what would have been a properly obtained test.

late courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted).

■ Pursuant to Indiana Code section 9–30–5–3, a person who violates Indiana Code section 9–30–5–2—operating a vehicle while intoxicated—with a previous conviction for operating while intoxicated within the past five years, commits a class D felony. Proof of intoxication may be established by a showing of impairment as, under Indiana Code section 9–30–5–2, there is no statutory requirement of proof of a particular blood-alcohol content above which a person is intoxicated. *See Pickens v. State,* 751 N.E.2d 331, 335 (Ind.Ct.App. 2001). "Evidence of the following can establish impairment: (1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." *Id.*

Here, Thorton testified that Monjar "was trembling"; had "a strong odor of urine"; "was wet from his bottom down"; and "his eyes were bloodshot." (Tr. 38). Thorton also testified that she observed Monjar "stumbling to his vehicle." (Tr. 39). Thorton further testified that as Monjar backed out of his parking space, he "almost hit [a] semi," and when he pulled his vehicle forward, "the front of the vehi-

cle came up on [t]he curb. . . ." (Tr. 40). Officer Pritchard testified that he observed a "partially consumed" (Tr. 78) bottle of alcohol on the passenger's seat of Monjar's vehicle and that Monjar "was having [a] hard time standing on his own." (Tr. 75–76). Officer Kitts testified that he could smell alcohol emanating from Monjar's person and that Monjar's eyes were "red [and] glassy. . . ." (Tr. 49). Officer Kitts also testified that he observed an open bottle of alcohol in Monjar's vehicle. Finally, Officer Kitts testified that Monjar failed a field-sobriety test.

The evidence is sufficient for the trial court to have found that Monjar operated a vehicle while intoxicated. Monjar's argument to the contrary amounts to an invitation to reweigh the evidence, which we will not do. Accordingly, we find that the evidence supports Monjar's conviction for operating while intoxicated.

Affirmed.

MAY, J., and CRONE, J., concur.