# FOR PUBLICATION



**FILED**

Aug 26 2014, 11:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1311-CR-471 |
| | ) | |
| BRANDON SCOTT SCHULZE, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable David N. Riggins, Judge
Cause No. 73D02-1308-CM-650

**August 26, 2014**

**OPINION -  FOR PUBLICATION**

**MAY, Judge**

The State of Indiana appeals the reinstatement of Brandon Scott Schulze's driving privileges, which had been suspended because he refused to take a chemical test for alcohol intoxication in violation of the Indiana Implied Consent law. *See* Ind. Code § 9-30-6-7. The trial court reinstated Schulze's privileges because the deputy who offered the test to Schulze was not certified to administer the test. The State argues the court's decision was erroneous because Schulze's refusal to take the test obviated any need for a deputy trained to administer the test. We reverse.

## FACTS AND PROCEDURAL HISTORY

On August 9, 2013, at around 7:00 a.m., Shelby County Sheriff's Deputy Ian Michael was dispatched to a location where a truck was off the road. While Deputy Michael was at the scene, Schulze arrived in his vehicle. Deputy Michael spoke with Schulze and noticed an odor of alcohol on his breath. Schulze's speech was slow and slurred, and his eyes were red and watery.

Deputy Michael performed a horizontal gaze nystagmus test and Schulze failed. Deputy Michael then performed a portable breath test which was positive for the presence of alcohol. He then informed Schulze of the implied consent law:

> I have probable cause to believe that you have operated a vehicle while intoxicated. I must now offer you the opportunity to submit to a chemical test and inform you that your refusal to submit to a chemical test will result in the suspension of your driving privileges for one year. If you have at least one previous conviction for [sic] operating a vehicle while intoxicated, your refusal to submit to a chemical test will result in a suspension for two years. Will you now take a chemical test?

(Tr. at 15-16.) Schulze replied that he would not take the test. Deputy Michael then

transported Schulze to jail.

During a pretrial conference on September 17, Schulze orally requested a hearing for Judicial Review of Probable Cause On Refusal of Chemical Test for Intoxication. On September 30, a hearing was held and Deputy Michael testified he was not a certified test operator on the DataMaster machine located at the jail. Schulze argued that because Deputy Michael was not a certified test operator, his offer of a chemical test was illusory, and thus the suspension of his license was invalid. The trial court granted his petition, finding: "This officer's not capable. The State failed to present any evidence to rebut that there was another officer on duty at that time that could do it." (*Id*. at 23.) The trial court then ordered Schulze's driving privileges reinstated.

## DISCUSSION AND DECISION

We first note Schulze did not file an appellee's brief. "When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party." *Spencer v. Spencer*, 990 N.E.2d 496, 497 (Ind. Ct. App. 2013). We apply a less stringent standard or review and we may reverse if the appellant establishes *prima facie* error. *Id. Prima facie* error is "error at first sight, on first appearance, or on the face of it." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006).

The trial court erred in reinstating Schulze's driving privileges, because Ind. Code chapter 9-30-6 does not require that the arresting officer be trained on the DataMaster machine before informing a driver of the implied consent law and determining whether the arrestee is willing to submit to a chemical test. To explain why the court erred, we must

3

apply "the express language" of the relevant statutes to the facts before us.  *Nash v. State*,

881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008) (internal citations omitted), *trans. denied*.

> We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words.  Where the language of the statute is clear and unambiguous, there is nothing to construe.  However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent.  The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result.  Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction.

*Id.*

"If a law enforcement officer has probable cause to believe that person committed an

offense under IC 9-30-5 [operating a vehicle while intoxicated], the person may be arrested."

Ind. Code § 9-30-6-3(a).  Furthermore:

> (a) A law enforcement officer who has probable cause to believe that a person has committed an offense under this chapter, IC 9-30-5 [operating a vehicle while intoxicated] . . . shall offer the person the opportunity to submit to a chemical test.
> * * * * *
> (c) A test administered under this chapter must be administered within three (3) hours after the law enforcement officer has probable cause to believe the person committed an offense under IC 9-30-5 . . . .
> (d) A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter.

Ind. Code § 9-30-6-2.  Ind. Code § 9-30-6-7 states:

> (a) If a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges.
> (b) If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges . . . the arresting officer shall do the following:
> > (1) Obtain the person's driver's license or permit if the person is in

4

> possession of the document and issue a receipt valid until the initial
> hearing of the matter . . . .
> (2) Submit a probable cause affidavit to the prosecuting attorney of the
> county in which the alleged offense occurred.

Finally, "[a]t any proceeding under this chapter, IC 9-30-5, or IC 9-30-9, a person's refusal to submit to a chemical test is admissible into evidence." Ind. Code § 9-30-6-3(b).

Nowhere in the chapter regarding implied consent does it specify that the officer who offers the chemical test must be certified to administer the test. Rather, the chapter explicitly states that the officer can transport an arrestee to someone who is certified to administer a chemical test:

> A law enforcement officer may transport the person to a place where the sample may be obtained by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:
> (1) A physician holding an unlimited license to practice medicine or osteopathy.
> (2) A registered nurse.
> (3) A licensed practical nurse.
> (4) An advanced emergency medical technician . . . .
> (5) A paramedic . . . .
> (6) . . . any other person qualified through training, experience, or education to obtain a bodily substance sample.

Ind. Code § 9-30-6-6(j). The only restriction is that the test must be administered within three hours of the time the officer develops probable cause. Ind. Code § 9-30-6-2(c). Therefore, Deputy Michael's offer of a chemical test was not illusory simply because he was not qualified to administer such a test. If Schulze had agreed to take the test, Deputy Michael could have found another officer at the jail who was certified to give a chemical test or could have transported Schulze to a hospital or other facility for the test. As Schulze refused to

5

submit to a chemical test, there was no reason for Deputy Michael to find a qualified person or take Schulze to a qualified person. The trial court erred when it determined Deputy Michael's offer of a chemical test was illusory.[1] Accordingly, we reverse.

Reversed.

KIRSCH, J., and BAILEY, J., concur.

---

[1] The trial court also noted that Deputy Michael did not present evidence that another officer was trained in administering the DataMaster. However, as Schultze refused to take the test, the availability of someone else to administer the test via DataMaster was moot.