## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 06 2020, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard D. Martin
Frankfort, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jacob T. Kingma,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 6, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1661<br><br>Appeal from the Clinton Superior Court<br><br>The Honorable Donald E. Currie, Judge Pro Tempore<br><br>Trial Court Cause No.<br>12D01-1808-F6-1199 |

**Mathias, Judge.**

[1]     The driving privileges of Jacob Kingma ("Kingma") were administratively suspended for two years because he refused to submit to a chemical test—a

blood draw—after being stopped on suspicion of Operating While Intoxicated ("OWI"), in violation of Indiana's Implied Consent Law. Kingma filed a motion for judicial review of the suspension and a subsequent motion to correct error, which were both denied. Kingma now appeals, presenting for our review whether he established by a preponderance of the evidence that the blood draw offered to him was illusory because it was made outside a hospital and because he was not transported to a hospital.

We affirm.[1]

## Facts and Procedural History

After the events recounted infra, Officer Marisol Lopez ("Officer Lopez") of the Clinton County Sheriff's Department tendered a probable cause affidavit to the Clinton County prosecutor's office declaring that Kingma refused a chemical test. *See* Ind. Code § 9-30-6-7.[2] The affidavit triggered proceedings that resulted in the two-year administrative suspension of Kingma's driving privileges. *See* I.C. §§ 9-30-6-9 through 10. Kingma then sought judicial review of his suspension. The facts are as follows.

---

[1] We heard oral argument at Knox Community High School in Starke County on December 9, 2019. We thank the school's administration, faculty, guests, and students for their hospitality. We also thank counsel for their oral advocacy and for participating in the subsequent discussion with students.

[2] The statute provides in pertinent part: "If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges . . . the arresting officer shall . . . [s]ubmit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred." I.C. § 9-30-6-7(b)(2).

[4]    Kingma was the subject of a traffic stop for failure to use a turn signal in Frankfort, Indiana, on the night of August 30, 2018. A K-9 unit gave a positive alert for drugs inside Kingma's stopped vehicle, and Officer Lopez, the responding officer, detected a strong odor of marijuana coming from Kingma. Kingma exhibited signs of intoxication, including bloodshot and glassy eyes and poor balance. Accordingly, Officer Lopez initiated an OWI investigation and administered three standardized field sobriety tests: the Horizontal Gaze Nystagmus ("HGN") test, Nine Step Walk test, and One Leg Stand test. Kingma passed the HGN test but failed the other two tests, leading Officer Lopez to conclude that Kingma was exhibiting obvious signs of impairment.

[5]    At this point in her investigation, Officer Lopez read Kingma his *Miranda* rights. When asked, Kingma admitted to having recently smoked marijuana. Officer Lopez then informed him that she wanted to conduct further testing and subsequently read Kingma an Implied Consent advisement from a department-issued card.[3] The advisement informed Kingma that Officer Lopez's observations led her to believe he had operated a vehicle while intoxicated and that he had the opportunity to submit to a chemical test. The advisement also

---

[3] The exact wording of the Implied Consent advisement that Officer Lopez recited to Kingma is not included in the record on appeal, but in her testimony, Officer Lopez summarized the content of the advisement she gave. Tr. pp. 19–21. A standard Implied Consent advisement is as follows: "I have probable cause to believe that you have operated a vehicle while intoxicated. I must now offer you the opportunity to submit to a chemical test and inform you that your refusal to submit to a chemical test will result in the suspension of your driving privileges for one year. If you have at least one previous conviction for operating a vehicle while intoxicated, your refusal to submit to a chemical test will result in a suspension for two years. Will you now take a chemical test?" *State v. Schulze*, 16 N.E.3d 441, 442–43 (Ind. Ct. App. 2014).

warned that refusal to submit to the chemical test would result in the suspension of his driver's license for one to two years. Because Officer Lopez suspected Kingma was under the influence of illegal drugs, she explained to him that a blood draw was in order. Kingma did not agree to a blood draw. He was then restrained and transported to the Clinton County Sheriff's Department, which is also the county's jail. Upon arriving at the jail, Officer Lopez again read Kingma the same Implied Consent advisement and informed him that she wanted him to undergo a blood draw. Kingma again declined to agree to the blood draw.

[6] The next day, August 31, 2018, the State charged Kingma with Level 6 felony OWI endangering a person and filed a notice of intent to seek enhanced penalty for OWI based on Kingma's prior conviction for the same offense.[4] A probable cause affidavit was filed with the recommendation that Kingma's driving privileges be suspended immediately for failure to submit to a chemical test, and on September 5, a two-year administrative suspension took effect. Appellant's App. pp. 2, 12.

[7] On April 8, 2019, Kingma filed two motions. One was to suppress the evidence obtained during the traffic stop—namely, the results of the field sobriety tests— based on Officer Lopez's alleged failure to obtain Kingma's knowing and voluntary consent to the search. And he also filed a motion for judicial review

---

[4] Kingma was convicted of OWI endangering a person under cause number 12D01-1701-CM-072 on August 7, 2017, in Clinton Superior Court. Appellant's App. p. 9.

of two issues: whether Officer Lopez had probable cause to request that Kingma submit to a chemical test, and whether Kingma knowingly and intentionally refused to submit to the test after being given a non-illusory offer. The trial court held a hearing on Kingma's motions on May 31; Officer Lopez testified at that time. The trial court issued an order denying both motions in which it concluded: that suppression of the field sobriety test results was not warranted; that Officer Lopez had probable cause to believe Kingma was impaired; and that Officer Lopez's offer of a chemical test was not illusory. In support of its conclusions, the trial court stated in part:

> 9. Indiana law allows for an officer, upon determination of probable cause to request chemical tests of breath, blood or urine or any combination, or all three tests.
>
> 10. Indiana law does not require an officer to advise defendants of how or where a test will be performed, only that any such request for testing not be "illusory."
>
> 11. Officer Lopez testified that had Kingma consented to the blood test she was requesting, that she would have transported Kingma to the Frankfort hospital located approximately 1 [one] mile from the Clinton County jail.
>
> 12. Officer Lopez's request for a blood draw was not illusory as she was willing and able to provide transportation to Kingma for such a test had he consented.

Appellant's App. pp. 33–34.

On July 5, 2019, Kingma filed a motion to correct error. Kingma argued that because Officer Lopez offered the blood draw in a location where there was no person authorized to perform the chemical test and did not specify that—if Kingma agreed to the blood draw—it would take place at a hospital, her offer was illusory, and thus Kingma's refusal was not made knowingly or intentionally. The trial court denied Kingma's motion to correct error on July 10, 2019, and Kingma filed a timely notice of appeal on July 19.

## Standard of Review

A trial court's order denying a motion for judicial review is an appealable final judgment. *Burnell v. State*, 56 N.E.3d 1146, 1149 (Ind. 2016) (citing I.C. § 9-30-6-10(g)). Kingma sought judicial review of his suspension and bore the burden of proof by a preponderance of the evidence. I.C. §9-30-6-10(f). A judgment entered against the party that bears the burden of proof is a negative judgment. *Burnell*, 56 N.E.3d at 1149–50. We will reverse a negative judgment only if it is contrary to law, meaning that "the evidence leads to but one conclusion and the trial court reached an opposite conclusion." *Id.* at 1150. A party appealing from a negative judgment "has a heavy burden to establish. . . that there was no basis in fact for the judgment rendered." *Id.* (citation omitted). This court considers the evidence in the light most favorable to the prevailing party and will not reweigh the evidence or judge witness credibility. *Id.* We interpret statutes de novo and afford the trial court's conclusion no deference. *Hurley v. State*, 75 N.E.3d 1074, 1077 (Ind. 2017).

## Overview of Relevant Statutes

[10] All persons who operate vehicles in Indiana are subject to the state's Implied Consent Law. I.C. § 9-30-6-1. As a condition of operating a vehicle, a driver impliedly consents to submit to a chemical test[5] when a police officer has probable cause to believe the driver has operated a vehicle while intoxicated. The general parameters of the Implied Consent Law are as follows:

> (a) A law enforcement officer who has probable cause to believe that a person has committed an offense under this chapter. . . shall offer the person the opportunity to submit to a chemical test.
>
> * * *
>
> (d) A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter.

I.C. § 9-30-6-2.

[11] Indiana Code section 9-30-6-6 governs the protocol for obtaining samples and performing chemical testing of urine, blood and other bodily substances. Relevant provisions of the section are as follows:

---

[5] A chemical test is defined as "an analysis of a person's blood, breath, urine, or other bodily substance for the determination of the presence of alcohol, a controlled substance or its metabolite, or a drug or its metabolite." I.C. § 9-13-2-22.

(h) The person authorized under this section to retrieve contraband or obtain a bodily substance sample **shall** take the sample or retrieve the contraband in a medically accepted manner.

(i) This subsection does not apply to contraband retrieved or a bodily substance sample taken at a licensed hospital [as defined by statute]. A law enforcement officer **may** transport the person to a place where the contraband may be retrieved or the sample may be obtained by any of the following persons who are trained in retrieving contraband or obtaining bodily substance samples and who have been engaged to retrieve contraband or obtain samples under this section:

> (1) A physician holding an unlimited license to practice medicine or osteopathy.

> (2) A registered nurse.

> (3) A licensed practical nurse.

> (4) An advanced emergency medical technician (as defined in IC 16-18-2-6.5).

> (5) A paramedic (as defined in IC 16-18-2-266).

> (6) . . .[A]ny other person qualified through training, experience, or education to retrieve contraband or obtain a bodily substance sample.

I.C. § 9-30-6-6 (emphasis added).

[12] Additionally, regarding refusal of a chemical test:

(a) . . . [T]he arresting officer **shall** inform the person that refusal will result in the suspension of the person's driving privileges.

(b) If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges [], the arresting officer **shall** do the following:

* * *

(2) Submit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred.

I.C. § 9-30-6-7 (emphasis added).

[13]     The law requires the BMV to suspend, for one year, the driving privileges of a person who refuses to submit to a chemical test; if the person also has a previous conviction for OWI, the BMV is required to suspend driving privileges for two years. I.C. § 9-30-6-9(b)(1).

[14]     Once a driver has been suspended for failure to comply with the Implied Consent Law, the person may petition a court for judicial review. I.C. § 9-30-6-10(a). A hearing on such a petition is limited to two issues: (1) whether the arresting law enforcement officer had probable cause to believe that the person was operating a vehicle while intoxicated, and (2) whether the person refused to submit to a chemical test offered by a law enforcement officer. I.C. § 9-30-6-10(c). The person's driving privileges must be reinstated if the court finds there to be no probable cause or if the court finds that the person did not refuse to

submit to a chemical test. I.C. § 9-30-6-10(d). It is the petitioner's burden to prove either is true by a preponderance of the evidence. I.C. § 9-30-6-10(f).

# Discussion and Decision

[15] The trial court found that because Kingma twice refused the offer to submit to a blood draw, judicial review was not warranted and suspension of his driving privileges was not error.[6] Appellant's App. pp. 44–45. Kingma's appeal is based on his argument that the chemical test offered to him was illusory. Appellant's Br. at 11. If the offer was illusory, Kingma's refusal would not be a proper basis for the administrative suspension of his driving privileges, and our reversal of the trial court's order denying his motion for judicial review would be in order.

[16] "A chemical test cannot be 'refused' unless it is 'offered'; thus, the propriety of the offer of a chemical test is relevant to the issue of whether it is refused." *Steward v. State*, 638 N.E.2d 1292, 1294 (Ind. Ct. App. 1994). Drivers must be offered "the opportunity to submit to a chemical test" and be notified of the consequences of refusal. I.C. § 9-30-6-2; *Zakhi v. State*, 560 N.E.2d 683, 686 (Ind. Ct. App. 1990). A "knowing and intentional" refusal of an non-illusory

---

[6] Kingma did not appeal Officer Lopez's probable cause determination; he argues that the matter of Officer Lopez's probable cause determination "remain[s] [a] viable issue to be addressed at trial, and, if necessary, on a direct appeal following a conviction." Reply Br. at 6. The trial court specifically denied Kingma's motion to suppress the field sobriety test results on which probable cause rested: any "deviation of the [tests] [goes] to the weight to be given said [tests], not [to their] admissibility." Appellant's App. p. 45. Because Kingma does not challenge the probable cause determination on appeal, we decline to address the matter and note only that the trial court's order denying judicial review was an appealable final judgment. *Burnell*, 56 N.E.3d at 1149 (citing I.C. § 9-30-6-10(g)). If Kingma wished to challenge the trial court's conclusion that Officer Lopez had probable cause in this appeal, it would not have involved an interlocutory appeal, as Kingma seems to believe. Reply Br. at 6.

offer, then, may be recorded when the officer reasonably believes that the driver knows he has been asked to submit to a chemical test and when the driver declines to submit to a test after it has been properly offered. *Roberts v. State*, 474 N.E.2d 144, 150 (Ind. Ct. App. 1985); *see also Vetor v. State*, 688 N.E.2d 1327 (Ind. Ct. App. 1997) (petitioner did not "refuse" breath test because officer failed to advise petitioner of consequences of refusal, making offer improper and illusory).

[17] Kingma does not dispute that he was properly informed of the Implied Consent Law and the consequences of refusing, nor does he dispute that he refused Officer Lopez's offer. Rather, Kingma challenges the *propriety* of Officer Lopez's offer because it occurred outside a hospital, with no person authorized to actually conduct the blood draw present or made available, and because Kingma was neither transported to a hospital nor informed that a hospital is where the blood test would occur if he agreed. Appellant's Br. at 10. Kingma argues this made the offer illusory and invalidated the effect of his refusal. He claims that Officer Lopez's testimony that she would have transported him to a hospital had he agreed to the blood test does not make her offer non-illusory.

[18] The State disputes that Officer Lopez made an illusory offer "simply because Officer Lopez declined to specify how and where the test would be completed." Appellee's Br. at 20. The State argues that the Implied Consent Law did not require Officer Lopez to transport Kingma to a hospital or inform Kingma that the test would occur in a hospital. *Id.* Thus, the State's position is that there was

no impropriety in Officer Lopez's offer and Kingma's refusal was valid. We agree with the State.

[19] As an initial matter, we note that the Implied Consent Law unequivocally does *not* require the officer who offers the chemical test to herself be certified to administer the test. *State v. Schulze*, 16 N.E.3d 441, 444 (Ind. Ct. App. 2014). The law anticipates that unauthorized persons—law enforcement officials—are likely to encounter drivers suspected of OWI, to develop probable cause, and to then be responsible for giving the Implied Consent advisement. Therefore, "[t]he chapter explicitly states that the officer [who is uncertified] can transport an arrestee to someone who is certified to administer a chemical test[.]" *Id.* (citing I.C. § 9-30-6-6(j)).[7] Applying this straightforward rule to Kingma's case, the fact that Officer Lopez was herself not authorized to conduct a blood draw did not invalidate her offer.

[20] Furthermore, the Implied Consent Law anticipates that offers of chemical tests will occur outside hospitals. *See* I.C. § 9-30-6-6(i). When that happens, "[a] law enforcement officer may transport the person to a place where the contraband may be retrieved or the sample may be obtained" by a list of authorized persons. *Id.* Regardless of where the chemical test is offered, what is also clear is that, if the chemical test is accepted, it must always be conducted by a

---

[7] At the time *Schulze* was decided, the subsection identifying those persons authorized to conduct chemical tests was located at Indiana Code section 9-30-6-6(j). The subsection was modified slightly in 2018 and its citation revised to its current location, Indiana Code section 9-30-6-6(i), cited *supra*.

statutorily authorized person. *See* I.C. § 9-30-6-6(h). Thus, because the law explicitly limits who is permitted to conduct chemical tests, offers that are or will be conducted by unauthorized persons are illusory. *Steward*, 638 N.E.2d at 1294.

[21] The facts of the case that gave rise to this rule are helpful to compare to the facts of Kingma's case. In *Steward*, a driver was detained in a traffic stop, arrested for marijuana possession, and transported to a county jail. At the jail, he agreed to submit to a urine test and was supervised by an officer for three hours, within which time the officer needed to collect the urine sample. *Id.* at 1293. When the driver failed to produce the sample in the allotted time, he was charged with driving while intoxicated based on his refusal to submit to a chemical test. *Id.* The driver appealed, and the State argued that the fact that the police officer was unauthorized to conduct the chemical test was irrelevant to the question of the offer's propriety. *Id.* at 1294. In reversing the driver's conviction, we found that:

> Aside from prisoners, the only persons present at the jail when [the driver] was to provide the sample were [unauthorized to take a urine sample under I.C. 9-30-6-6(i)]. . . . No other person authorized to take a urine sample . . . was called to the jail . . . As such, [the officer's] "offer" of a urine test was illusory because no one authorized by statute to take a urine sample was present at the jail, no authorized person was called to the jail to take a sample, and [the driver] was not transported to a facility where a sample could properly be taken.

*Id.*

[22] Kingma argues by the same logic that the chemical test offered to him was illusory. Appellant's Br. at 17; Reply Br. at 7. Officer Lopez was unauthorized to conduct the test herself. No other authorized persons were present or were called to the location where she transported Kingma, the county jail. Therefore, Kingma was not transported to a facility where the blood sample could be properly taken by authorized personnel, hospital or otherwise. Tr. pp. 34–36. On the surface, *Steward* seems to control the appropriate outcome in Kingma; however, the critical difference between the cases is that the driver in *Steward* in fact agreed to submit to the chemical test, and then an unauthorized person was actually tasked with conducting his chemical test. *Steward*, 638 N.E.2d at 1293. Kingma, on the other hand, did not agree to submit to the chemical test, and the record reveals no evidence of Officer Lopez or any other unauthorized person intending or attempting to conduct the blood test. The State argues that this difference sufficiently distinguishes Kingma's case from *Steward* and means that Officer Lopez's offer was not illusory. Appellee's Br. at 15. We agree with the State that *Steward* is more properly read as establishing that an officer who "offers to personally carry out a chemical test when they are not authorized to do so has made an illusory offer to a defendant." Appellee's Br. at 17–18. Therefore, *Steward* does not provide the basis for Kingma's position to prevail.

[23] In response to Kingma's contention that Officer Lopez's offer was illusory because it did not advise Kingma that agreeing to the test would result in his transport to a local hospital, the trial court noted that the Implied Consent Law "does not require an officer to advise defendants of how or where a test will be

performed[.]" Appellant's App. p. 33. The trial court distinguished Officer Lopez's offer from the offer in *Steward* because Officer Lopez later testified that, at the time of her offer, she was "willing and able to provide transportation [to a licensed hospital] to Kingma for [the blood draw] had he consented." Appellant's App. p. 34. Kingma disputes that Officer Lopez's after-the-fact testimony about what she *would have done* makes her offer any less illusory under *Steward*. Kingma argues that distinguishing his case from Steward's creates an exception that "swallows" the rule in *Steward*: "If a law enforcement officer's non-verbalized willingness to transport a motorist to an appropriate facility for chemical testing is sufficient to render the offer non-illusory, all knowledgeable law enforcement officers will, after the fact, contend that they would have so transported the motorist had he[] consented." Appellant's Br. at 17–18.

[24] The relevant portions of Officer Lopez's testimony given at the combined hearing on Kingma's motion for judicial review and motion to suppress are as follows:

> Q: And you mentioned a blood draw.
>
> A: Right.
>
> Q: Did you offer to take [Kingma] to the Clinton County Hospital or another medical facility to do the blood draw?
>
> A: I did not tell him.

Q: Was there anyone present at the scene qualified to do a blood draw?

A: No.

\* \* \*

Q: Okay. You did not at any point say I'll drive you out to the hospital correct?

A: Correct.

\* \* \*

Q: With regard to completing a blood draw[,] what ways would be available to you if he had agreed to submit the test to complete a blood draw?

A: [W]e would transport him to the local hospital and have [] their staff take the blood.

Q: So that's the normal practice if he agrees to submit to the test?

A: Correct.

Q: . . . After you arrived at the jail in general if he had [] agreed to take the test after giving him the Implied Consent what would you have done?

A: I would [have] explained to him that I would have taken him to the local hospital to perform that testing.

Q: Was it ever [] in your mind that you would complete the blood draw?

A: No.

Q: Was it ever in your mind that some other personnel at the Clinton County Sheriff's Office would complete the blood draw?

A: No.

Q: [W]as it ever in your mind that some other officer of the Frankfort Police Department would complete the blood draw?

A: No.

Q: It's not been your experience that you ever would have an EMT [] complete a blood draw in a case?

A: No.

Q: So in this particular case if he had agreed to submit to the test where would the test have been completed?

A: At the local hospital.

Q: Do you recall him ever even asking [] under what conditions or where such a blood draw was to be completed in this investigation?

A: No.

Tr. pp. 34–38.

[25]     This court has previously held that when "a police officer offers to transport the defendant to the hospital for a chemical test, such an offer is valid and not an illusory request." *Monjar v. State*, 876 N.E.2d 792, 796 (Ind. Ct. App. 2007), *trans. denied*. Here, we are faced with the converse scenario: Kingma challenges Officer Lopez's offer as illusory because her offer did not include the information that Kingma would be taken to a hospital for the blood draw.[8] It does not follow, however, that converse circumstances lead to opposite conclusions. None of our rules of law, nor the Implied Consent Law itself, indicate that otherwise valid offers are made illusory if unaccompanied by information about where the chemical test will take place.

[26]     The Implied Consent Law does *not* require that drivers who are given the opportunity to submit to chemical tests also be told where the chemical tests will occur. The bottom line in this case is that Kingma never agreed to submit to the blood test when it was offered. To the contrary, he refused each of the two times the test was offered. Kingma was free to choose, and he freely chose twice to refuse the blood test authorized by Indiana law. At some point—and in this case, the point is reached—law enforcement officials are entitled to believe that "No means no." Kingma was entitled to refuse, but there is a well-

---

[8] We note that Kingma does not allege that he would have agreed to submit to the blood draw had he known it would be performed by an authorized medical professional at the jail, or had he known that it would be conducted at a nearby hospital.

established legal consequence for his refusal, which in this case amounted to a two-year license suspension.

## Conclusion

[27] After failing two field sobriety tests and admitting to illegal drug use, Kingma refused to submit to Officer Lopez's offered blood draw, not once, but twice. Officer Lopez's offers to Kingma were adequate under the Implied Consent Law. Accordingly, upon review of the record, we find that the trial court did not abuse its discretion when it denied Kingma's motion for judicial review of the administrative suspension of his driver's license. For all of these reasons, we affirm the trial court.

[28] We affirm.

Vaidik, J., and Tavitas, J., concur.